EXHIBIT J

# Citi® Double Cash Card

 **citi**

BRYANA S MCGUIRK
Member Since 2017  Account number ending in: 8820
Billing Period: 11/24/20-12/22/20

www.citicards.com
**Customer Service 1-855-473-4583**
TTY-hearing-impaired services only 1-800-325-2865
BOX 6500 SIOUX FALLS, SD 57117

## DECEMBER STATEMENT



**Minimum payment due:**
**New balance as of 12/22/20:**
**Payment due date:**

Your next AutoPay payment
will be deducted from your bank account
on 01/20/2021.  Please note that the next
AutoPay payment may be reduced if you have
made additional payments or received any
credits during the current billing cycle.

### Account Summary

Late Payment Warning: If we do not receive your minimum payment by the date
listed above, you may have to pay a late fee of up to $40 and your APRs may be
increased up to the Penalty APR of 29.99%.
For information about credit counseling services, call 1-877-337-8187.

Previous balance
Payments
Credits
Purchases
Cash advances
Fees
Interest



**New balance**

### Credit Limit
Credit limit
Includes $1,700 cash advance limit
Available credit
Includes $1,700 available for cash advances

---


CASH REWARDS
SUMMARY

**Your Cash Rewards:**

» See page 2 for more information
about your rewards

---

**For Payments, send check to: CITI CARDS, PO BOX 78045, Phoenix, AZ, 85062-8045**

 **citi**

P.O. Box 6004
Sioux Falls, SD 57117-6004

Your Monthly Statement
is Enclosed

**Pay your bill from virtually anywhere
with the Citi Mobile® App and Citi® Online**

**citi**  To download:
Text 'App15' to MyCiti (692484)
or go to your device's app store.
Or visit www.citicards.com

Minimum payment due
New balance
Payment due date

Amount enclosed: $

Account number ending in 8820
**Please make check payable to CITI CARDS.**

  01/20/21

CITI CARDS
PO BOX 78045
Phoenix, AZ 85062-8045

BRYANA S MCGUIRK



Case 2:21-cv-01546-JAM-KJN    Document 1-4    Filed 08/27/21    Page 3 of 36
www.citicards.com
Customer Service 1-855-473-4583
TTY-hearing-impaired services only 1-800-325-2865
Page 2 of 3

BRYANA S MCGUIRK

## Account Summary



| Trans. date | Post date | Description | Amount |
|---|---|---|---|

**Payments, Credits and Adjustments**



**Standard Purchases**

| 12/16 | 12/16 | HOMEGOODS # 0840  SAN RAFAEL  CA | |
| 12/16 | 12/16 | PARKING SVC/SAN RAFAEL SAN RAFAEL  CA | $1.00 |



### Fees charged

Total fees charged in this billing period                    $0.00



**CASH REWARDS SUMMARY**

**TOTAL CASH REWARDS BALANCE:**

Previous Balance:
Earned this Period:
Total Earned this Period:
Redeemed this Period:
Ending Rewards Balance:

### THE TWO WAYS TO EARN!

**Cash Back on Purchases**

Eligible Purchases:
Cash Back on
Purchases Earned:

**Cash Back on Payments**

Eligible Payments:
Cash Back on
Payments Earned:

### PURCHASE TRACKER AND HOW
### CASH BACK ON PAYMENTS WORKS

1. Total Payment Made:
   *Note: payments are eligible up to the amount in your Purchase Tracker*
2. Purchase Tracker:
3. Eligible Payment:
4. Cash Back on
   Payments Earned:
5. Ending Purchase Tracker:

*Purchase Tracker - When you make a purchase, that amount goes into your Purchase Tracker. Balance transfers, cash advances, fees and interest are not included. Make an eligible payment and the Purchase Tracker gets reduced by that amount. When the Purchase Tracker reaches $0, you won't earn cash back on payments until more purchases are made. See Terms & Conditions for details.*

**Questions? Time to Redeem?**
Visit citi.com or call 1-855-473-4583
Bonus cash back may take 1-2 billing periods
to appear on your statement.

EXHIBIT K

\

| | |
|---|---|
| **From:** | Bryana McGuirk <bmcguirk@kernlaw.com> |
| **Sent:** | Saturday, March 27, 2021 2:05 PM |
| **To:** | James Ison |
| **Cc:** | Phil Segal |
| **Subject:** | Re: Talens v. The Japanese Feast, Inc. - |
| **Attachments:** | AMENDED RPOD, SET ONE.pdf; AMENDED RPOD, SET TWO.pdf |

Mr. Ison,

Please find enclosed our amended responses. We will provide the verification as soon as we receive it from our client.

Thank you.





On Sat, Mar 27, 2021 at 1:55 PM Bryana McGuirk <bmcguirk@kernlaw.com> wrote:
Good afternoon,

I have sent another email to my client regarding the signed verifications. Sorry for the delay. You should receive it by Monday.

On Sat, Mar 27, 2021 at 12:30 PM James Ison <james@jisonlaw.com> wrote:

Mr. Segal and Ms. McGuirk:


Per Judge Halperin's order after the March 10, 2021 Informal Discovery Conference, Mr. Kawashima and The Japanese Feast, Inc. were required to provide no later than 5:00 p.m. on March 26th verified supplemental responses confirming that no responsive documents were being withheld on the basis of privilege or that privileged responsive documents were being withheld and a privilege log. Neither defendant Kawashima nor defendant The Japanese Feast, Inc. provided amended responses.  I will assume that no further responses will be forthcoming because they do not exist, i.e., the defendants have already produced all the documents they have that they contend support their assertion that Ms. Tara L. Strong and Ms. Bryana McGuirk were physically present at the mediation on December 16, 2021.  It is unfortunate that you are making us file a motion to get the verified supplemental responses you told Judge Halperin would be provided.

EXHIBIT L

James Ison

From: James Ison
Sent: Thursday, December 24, 2020 11:03 AM
To: Philip Segal
Cc: Bryana McGuirk; Sara Yun
Subject: RE: Talens v. Japanese Feast – Response to Supp Rogs

Mr. Segal:

You crossed the line. I will respond in due time.

Jim

From: Philip Segal <phil@kernlaw.com>
Sent: Thursday, December 24, 2020 10:48 AM
To: James Ison <james@jisonlaw.com>
Cc: Bryana McGuirk <bmcguirk@kernlaw.com>; Sara Yun <syun@kernlaw.com>
Subject: Re: Talens v. Japanese Feast – Response to Supp Rogs

> Mr Ison. This has gone far enough. You are constantly misrepresenting almost everything which is why I
> stopped speaking to you at the very beginning. We will not accept any more email communications
> from you on this case. All communications and letters and discovery will now need to be by mail or
> hand delivery. You will likely be disbarred soon for unethical conduct. I have never been wrong. You
> can only email us in an emergency. If it is not an emergency we will all disregard your nonsense.

Send a formal letter in the mail with all your meet and confer issues. You are and have been abusive and using email to
harass my employees and staff. Knock it off. I will not be responding to any response to this email from you.  This email
will be exhibit A to all oppositions to any motion you file. See you in court

Philip Segal

Sent from my iPad

On Dec 24, 2020, at 11:30 AM, James Ison <james@jisonlaw.com> wrote:

> Hello Bryana,
>
> I got your out of office reply saying your are out until January 4. I don't know why you didn't tell me that
> yesterday morning when you replied to my email at 9:07 a.m. yesterday morning rather than insisting
> that I send you a letter. I remind you that misuses of the discovery process include "[f]ailing to confer in
> person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith
> attempt to resolve informally any dispute concerning discovery, if the section governing a particular
> discovery motion requires the filing of a declaration stating facts showing that an attempt at informal
> resolution has been made." (Code Civ. Proc., section 2023(i).)

1

EXHIBIT M

PHILIP A. SEGAL, ESQ. 137633
GRACE M. HARRIETT, ESQ. 323633
TODD P. DRAKEFORD, ESQ. 317646
**KERN, SEGAL & MURRAY**
15 Southgate Ave, Suite 200
Daly City, CA 94015
Tel: (415) 474-1900
Fax: (415) 474-0302

Attorneys for Defendants,
MERCURY GENERAL CORPORATION (also erroneously sued as MERCURY
INSURANCE), RANDALL R. PETRO

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

| | |
|---|---|
| JAMES J. ISON, THE ISON LAW FIRM, PC, | NO.: CGC-20-589080 |
| Plaintiffs, | **DECLARATION OF BRYANA S. MCGUIRK, ESQ. IN SUPPORT OF DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL ANTI-SLAPP MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| vs. | |
| MERCURY INSURANCE; MERCURY GENERAL CORPORATION; KERN SEGAL & MURRAY; PHILIP A. SEGAL, RANDALL R. PETRO; and DOES 1 through 100, inclusive, | |
| Defendants. | Date:  June 10, 2021<br>Time:  9:30 a.m.<br>Dept.  302, Law & Motion |
| | Complaint filed:  December 31, 2020 |
| _____/ | |

### DECLARATION OF BRYANA S. MCGUIRK, ESQ.

I, Bryana S. McGuirk, declare as follows:

1. I am an attorney at law duly licensed to practice before the Courts of the State of California and an associate at the law firm Kern, Segal & Murray. I have personal knowledge of the matters stated herein and if called upon to testify thereto could and would competently do so.

2. BRENDA TALENS, PRISCILLA L. BARREDO, ASHLEY DINA-MARIE BARREDO v. THE JAPANESE FEAST, INC., KENICHI KAWASHIMA,

SAMUEL E. HERNANDEZ ("Talens Case"), is an active lawsuit. The Talens Case was filed on September 13, 2019 in San Mateo County with case number 19CIV05403.

3. Defendant The Japanese Feast, Inc. in the Talens Case was insured by Mercury Insurance at the time of the accident alleged in the Talens Case.

4. Defendant Mercury, pursuant to Defendant The Japanese Feast, Inc.'s insurance policy, retained KERN SEGAL & MURRAY as defense counsel.

5. Despite local and state-wide stay at home orders, Plaintiff Ison insisted that mediation for the Talens Case would be in-person and that Mercury's adjuster would personally be present for the mediation in return for dismissing Defendant KAWASHIMA from the Talens Case.

6. Two days before the mediation for the Talens Case, Ms. Stacy Diamond-Garcia, Mr. Diamond's assistant, emailed the parties regarding receipt of the briefs and to confirm the in-person nature of the mediation and offered to set-up Zoom to comply with local and state stay at home orders.

7. I responded via email that it was at Plaintiff Ison's request that Mercury's adjuster, Ms. Tara Strong, and I would be in person.

8. I arrived at 9:35 am and Ms. Strong arrived at 9:50 am. We were escorted to a conference room in Stuart Diamond's office

9. On December 23, 2020, I responded to Plaintiff Ison via email that he already had confirmation of the physical presence of Ms. Strong and myself at the mediation and noted that the subpoena was improper due to mediation privilege.

10. Plaintiff Ison then requested an IDC regarding Defendant KAWASHIMA's Discovery Responses, to which I responded to the Court that all non-privileged documentation had been provided as requested.

11. On February 16, 2021, Defendants in the underlying suit, the Talens Case, filed a Motion for § 128.5 Sanctions for Bad Faith Participation in Scheduled Mediation seeking monetary sanctions from Plaintiffs in the amount of $4,170.00 (FAC ¶ 65).

1     I provided a declaration under oath that Ms. Strong and I were present at the
2     mediation.

3   12. On December 17, 2020, Ms. Sara Yun, my assistant, sent Plaintiff Ison Defendant
4     Samuel Hernandez's supplemental discovery responses as part of the Talens Case. I
5     was cc'ed on this email.

6   13. On December 22, 2020, Plaintiff Ison emailed me requesting my availability to meet
7     and confer over the responses via phone.

8   14. On December 23, 2020, I responded via email and asked for a formal meet and confer
9     letter.

10   15. Through letters, emails, and document production in the Talens Case, I have
11     provided Plaintiffs with evidence of Ms. Strong's and my presence at the
12     mediation, including Mr. Diamond's cancelled check amounting to the lunch that
13     he paid for parties at the mediation; my personal credit card statement indicating
14     my payment for parking; Ms. Strong's debit card line item statement indicating her
15     payment for parking; and text message communications between Ms. Strong and
16     myself the day of the mediation.

17

18     I declare under penalty of perjury under the laws of the State of California, that the
    foregoing is true and correct and that this Declaration was executed this _27_ day of
19     April, 2021, at _Daly City_ California.

20

21

22     BRYANA S. MCGUIRK

23

24

25

26

27

28

## PROOF OF SERVICE

*Ison v. Mercury, et al.*
San Francisco County Superior Court Case No. CGC-20-589080

I declare that:

I am employed in Los Angeles County, California. I am over the age of 18 years and not a party to the within cause; my business address is 301 East Ocean Blvd, Suite 600, Long Beach, CA 90802.

On the date set forth below, I served the within:

**DECLARATION OF BRYANA S. MCGUIRK, ESQ. IN SUPPORT OF DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL ANTI-SLAPP MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT**

☐ **BY MAIL SERVICE:** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Post Office box at Long Beach, California, addressed as stated on the attached service list.

☐ **BY FACSIMILE:** by sending a copy via Facsimile to the person(s) at the Facsimile number(s) as stated on the attached service list.

☑ **BY E-MAIL:** by sending a copy via e-mail to the person(s) at the e-mail address(es) as stated on the attached service list, pursuant to CCP § 1010.6.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on May 3, 2021 in Long Beach, California.

SADA KAITA

**SERVICE LIST**

*Ison v. Mercury, et al.*
San Francisco County Superior Court Case No. CGC-20-589080

James Ison, Esq.
333 University Ave Suite 200
Sacramento, CA 95825
Attorney for Plaintiff James Ison
T: (916)565-7677
F: (916)929-0488
Email: james@jisonlaw.com

EXHIBIT N

1  James J. Ison (SBN 209116)
   The Ison Law Firm, PC
2  333 University Avenue, Ste. 200
   Sacramento, CA 95825
3  Telephone: (916) 565-7677
   Facsimile: (916) 929-0448
4  james@jisonlaw.com

5  Attorneys for Plaintiffs James J. Ison and
   The Ison Law Firm, PC

6

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**05/27/2021**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

7            **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                  **FOR THE COUNTY OF SAN FRANCISCO**

9

10  JAMES J. ISON, THE ISON LAW          **CASE NO.: CGC-20-589080**
    FIRM, PC
11                                        **PLAINTIFFS MEMORANDUM OF**
              Plaintiffs,                 **POINTS AND AUTHORITIES IN**
                                          **OPPOSITION TO MERCURY**
12  v.                                    **INSURANCE GROUP AND**
                                          **RANDALL PETRO'S SPECIAL**
13  MERCURY INSURANCE, MERCURY            **MOTION TO STRIKE [CCP**
    GENERAL CORPORATION, KERN             **425.16(g)]**
14  SEGAL & MURRAY, PHILIP A.
    SEGAL, RANDALL PETRO, DOES 1-         Complaint Filed:    December 31, 2020
15  100, inclusive,

16            Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I. SUMMARY OF MOTION.................................................................................................1

II. LEGAL ARGUMENT ...................................................................................................2

   A.   The SLAPP Analysis: A Two-Step Process .............................................................3

   B.   Mercury's Illegality Can Be "Conclusively Shown by the Evidence" Such
       That Its Activities Are Not Protected By Litigation Privilege or Anti-
       SLAPP Statute.............................................................................................................4

       1.   The Evidence Conclusively Shows That Mercury Committed
           Extortion; Therefore, Its Activities Are Not Protected by the Anti-
           SLAPP statute .............................................................................................4

       2.   The Evidence Conclusively Shows That Mercury Aided and
           Abetted KSM's and Diamond's Violations of Business &
           Professions Code § 6128 ............................................................................5

           a.   Diamond Could Not Provide Plaintiff With A Signed MCA
               For 27 Hours And Then Lied About Reason for the Delay .............6

           b.   Strong's "Debit Card Line Item" Proves She Was Not
               Present ........................................................................................6

            c.   McGuirk's Debit Card Statement Proves She Left
               Diamond's Office By 10:30 a.m. .................................................7

            d.   Suppression of Evidence Proves Its Guilt (CACI 204)...................7

            e.   Admissions By Silence (*Evid. Code*, § 1221; CACI 213) ...............7

            f.   Mercury Would Be Able to Produce Stronger Evidence If It
               Had Attended Mediation; The Evidence It Has Produced
               Should be Viewed With "Distrust" (*Evid. Code*, § 413;
               CACI 203).....................................................................................8

            g.   Mercury's Failure to Explain Problems With its Key
               Evidence Is Admissible Evidence of Mercury's Guilt (*Evid.
               Code*, § 413; CACI 205) ..............................................................8

            h.   Text Messages...............................................................................8

            i.   Mercury Withdraws Its Sanctions Motion – An Admission
               of Guilt ........................................................................................9

   C.   The Litigation Privilege Does Not Provide Blanket Immunity for Every
       Type of Litigation Misconduct – It Has Limits .........................................................9

       1.   First Element: The Gravamen of Plaintiffs' Claims Against
           Mercury Pertain to Noncommunicative Conduct Not Covered by
           the Litigation Privilege...............................................................................9

i

1

# TABLE OF AUTHORITIES

2

## CASES

3    *Action v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1246 ........................................................... 6

4    *Aka v. Washington Hospital Center* (D.C. Cir. 1998) 156 F.3d 1284, 1293 ................................... 6

5    *Appel v. Wolf* (S.D. Cal. 2019) Case No.: 3:18-cv-814-L-BGS, p. 9 ........................................... 11

6    *Argentieri v. Zuckerberg* (2017) 8 Cal.App.5th 768, 785-86 ...................................................... 10

7    *Barri v. Workers' Comp. Appeals Bd.* (2018) 28 Cal.App.5th 428, 461 .................................... 5

8    *Barry v. State Bar of Cal.* (2017) 2 Cal.5th 318, 325 ........................................................... 3

9    *Cal. Back Specialists v. Rand* (2008) 160 Cal.App.4th 1032, 1037 ........................................ 14

10    *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 138 n.12 ...................................................... 12

11    *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 ...................................................... 15

12    *Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 142-43 ...................................................... 11

13    *Eisendrath v. Superior Ct. of Los Angeles* (2003) 109 Cal.App.4th 351, 364 ........................ 13

14    *Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; (§

15         425.16, subd. (b)(1)................................................................................................................ 14

16    *Flatley v. Mauro* (2006) 39 Cal.4th 299, 316 ........................................................................ 4

*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 ............................ 4

17    *Hallinan v. Committee of Bar Examiners* (1966) 65 Cal.2d 447, 471 .................................... 5

18    *Lappe v. Sup. Court* (2014) 232 Cal.App.4th 774, 783 ...................................................... 12

19    *Logan v. Zimmerman Brush Co.* (1982) 455 U.S. 422, 430 ................................................ 5

20    *Mission Beverage Co. v. Pabst Brewing Co.* (2017) 15 Cal.App.5th 686, 700-1 .................. 14

21    *Mouchette v. Board of Education* (1990) 217 Cal.App.3d 303,313 .................................... 10

22    *Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 ........................................................................ 3

23    *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266 .................................................... 14

24    *Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140, 150 .................................. 11

25    *Oren Royal Oaks Venture v. Greenberg, Bernard, et al.* (1986) 42 Cal.3d 1157,

26         1168 .......................................................................................................................................... 15

27    *Paul v. Friedman* (2002) 95 Cal.App.4th 853 ...................................................................... 11

28    *People v. Edelbacher* (1989) 47 Cal.3d 983, 1007 ................................................................ 7

i

## I. <u>SUMMARY OF MOTION</u>

Plaintiffs James J. Ison and The Ison Law Firm (collectively "Ison") made an agreement with Mercury Insurance's panel counsel, Mr. Philip A. Segal of Kern Segal & Murray ("KSM"), whereby Ison would dismiss Mr. Kenichi Kawashima from the underlying case if Mercury would pay for and ***personally attend*** a mediation ("Agreement") that would hopefully resolve it. The parties agreed to Stuart D. Diamond ("Diamond") as mediator and scheduled it for December 16, 2020 at 10:00 a.m. at his office in San Rafael. Ison arrived at 10:25 and left at about 2:00 p.m.

That much is undisputed. Beyond that, however, the parties offer differing accounts of what happened that day. Plaintiffs' First Amended Complaint ("FAC") provides a detailed account of the tortious conduct and supporting documentation. Defendants Mercury and Mr. Randall R. Petro (collectively "Mercury") filed the instant Motion to Strike ("Motion") in response. Plaintiffs' dispute with Mercury boils down to one core question: did Mercury personally (i.e., physically) attend the mediation? Diamond and KSM claim Mercury was there; Ison claims Mercury was not. If Mercury can show proof it was present, Ison's case against it would be far weaker; conversely, if Ison can prove Strong was not present, Mercury, KSM and Diamond must be presumed guilty of a fraud, cover up and extortion scheme in which they breached a host of legal and ethical duties that arguably warrant criminal prosecution.

Mercury's version of events is as follows: On December 16, 2020, McGuirk and Strong parked at the 3rd and A Street garage in San Rafael at 9:35 a.m. and 9:50 a.m., respectively. (McGuirk Decl., ¶ 8) At Diamond's office they both signed the Mediation Confidentiality Agreement ("MCA") after Ison, who arrived 25 minutes late at 10:25 a.m. (Declaration of James J. Ison ("Ison Decl."), ¶ 31) Strong and McGuirk left after 3.5 hours. (Diamond Decl., ¶ 9) After they were gone, Diamond told Ison the mediation was over. (Id. at ¶ 10) McGuirk was charged $1.00 for the four hours of parking; Strong was charged $.50. (Ison Decl., ¶¶ 47, 48, Exs. M, N) McGuirk texted Strong at 8:21 p.m. to make sure she got home safely. (Id. at ¶ 50, Ex. P) Strong replied: "Enjoy Vegas!!!" (*Id.*) On December 21st, Ison emailed Petro in his capacity as Mercury's registered agent for service of process to accept email service of a subpoena requesting records that

1

1    proved Strong was at mediation. On December 23rd, McGuirk accused Ison of "harassing" Petro
2    while threatening to seek sanctions and refusing to accept service of the subpoena. On December
3    24th, Segal told Ison "This has gone far enough. . . . You will likely be disbarred soon for unethical
4    conduct. I have never been wrong." (Id. at ¶ 46, Ex. L)

5         To prove Strong's presence, Mercury produced Strong's "debit card line item" dated
6    December 17, 2020 showing she was charged $.50 for parking in San Rafael and McGuirk's credit
7    card statement showing she was charged $1.00 on December 16th for parking in San Rafael. (Ison
8    Decl., Exs. M, N) If Mercury and KSM were innocent of the fraud of which they are accused, the
9    rational and cost-effective thing for them to do would have been to voluntarily produce records
10   proving Strong and McGuirk were present. KSM's fiduciary duty to Kawashima mandates no less;
11   to do otherwise is legal malpractice. Instead, they attacked Ison with threats and smears that further
12   proves what has already been conclusively established: Mercury did not attend the mediation.[1]

13        The gravamen of Plaintiffs' causes of action against Mercury is twofold. First, it paid a
14   mediator to help it to fraudulently obtain Kawashima's dismissal and use his position of trust to
15   surreptitiously probe Ison for any information about his case that might be helpful to Mercury. And
16   second, when the fraud was discovered, Mercury tried to strong arm Ison into dismissing
17   Kawashima. Ison filed this lawsuit as a defensive measure to protect his client and his professional
18   reputation: this is not a SLAPP suit. Hence, Mercury's Motion has no merit and must be denied.

19                                    **II. LEGAL ARGUMENT**

20        On May 4, 2021, Mercury filed the instant motion to strike claiming Ison filed a SLAPP
21   suit. "A SLAPP suit — a strategic lawsuit against public participation - seeks to chill or punish a
22   party's exercise of constitutional rights to free speech and to petition the government for redress of
23   grievances. The Legislature enacted Code of Civil Procedure section 425.16 - known as the anti-
24   SLAPP statute — to provide a procedural remedy to dispose of lawsuits that are brought to chill
25   the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.)

26   ─────────────────
     [1] On May 19, 2021, Plaintiffs asked the Court for an order shortening time to hear the motion to open
27   discovery per section 425.16(g). The Court denied the application "without prejudice" and suggested
     Plaintiffs raise the issue again when the motion is heard. Plaintiffs wish to subpoena third party records and
28   conduct discovery on Mercury, Diamond and KSM.

2

1  Its purpose is "to shield defendants from the undue burden of defending against claims filed not for

2  the purpose of securing judicial redress, but to intimidate or harass on the basis of the defendant's

3  constitutionally protected activity." (*Barry v. State Bar of Cal.* (2017) 2 Cal.5th 318, 325.)

4  Originally it was intended to protect "common citizens from large corporate entities", but was

5  "broadened to protect large corporations" leading one scholar to ask: "*Has the development of anti-*

6  *SLAPP law turned the statute into a tool to be used against the very parties it was intended to*

7  *protect?*" (*USA Waste of California, Inc. v. City of Irwindale* (2010) 184 Cal.App.4th 53, 66;

8  Sangster (Sept. 2003) 26 L.A. Law. 37-38.)

9       As stated by the California Department of Insurance, Mercury has a "lengthy history of

10  serious misconduct, and its attitude - contempt towards and/or abuse of its customers, the

11  [California Insurance] Commissioner, its competition, and the Superior Court" such that among the

12  many "consumer victims of its bad faith, Mercury has a deserved reputation for abusing its

13  customers and intentionally violating the law with arrogance and indifference." (Ison Decl., Ex. X)

14  Indeed, it is Mercury's contempt for the law as described by the DOI that undermined the integrity

15  of the mediation process in the underlying action that compelled Ison to file suit. Mercury is a $5.9

16  million corporation that wields enormous power and influence; Ison is a solo practitioner. He could

17  not possibly intimidate Mercury. Mercury's cynical weaponization of the anti-SLAPP statute

18  against persons defending themselves against its abusive conduct cannot be what the Legislature

19  intended. Ison's lawsuit is not a SLAPP suit; therefore, Mercury's Motion must be denied.

20  **A.    The SLAPP Analysis: A Two-Step Process**

21       "A cause of action against a person arising from any act of that person in furtherance of the

22  person's right of petition or free speech . . . in connection with a public issue shall be subject to a

23  special motion to strike, unless the court determines that the plaintiff has established that there is a

24  probability that the plaintiff will prevail on the claim." (*Civ. Proc. Code*, § 425.16(b)(1).) "First,

25  the court decides whether the defendant has made a threshold showing that the challenged cause of

26  action is one arising from protected activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) "[I]f

27  the defendant does not meet its burden on the first step, the court should deny the motion and need

28

3

not address the second step." (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 266.) "If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier, supra*, at 88.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute — i.e., that arises from protected speech or petitioning *and* lacks even minimal merit — is a SLAPP, subject to being stricken under the statute." (*Navallier*, at 89 [italics in original].)

The "court considers the pleadings and evidence submitted by both sides but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff . . . and evaluate the defendant's evidence only to determine if it has defeated arguments submitted by the plaintiff as a matter of law. [citations] The trial court merely determines whether a prima facie showing has been made that would warrant the claim going forward." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

**B.    Mercury's Illegality Can Be "Conclusively Shown by the Evidence" Such That Its Activities Are Not Protected By Litigation Privilege or Anti-SLAPP Statute**

If the defendant's "illegality is conclusively shown by the evidence, the motion [to strike] must be denied." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 316.) The high Court "emphasize[d] that the question of whether the defendant's underlying conduct was illegal as a matter of law is preliminary" and "not the same showing as the plaintiff's second prong showing of probability of prevailing." (*Id.* at 320.) Both require analysis of the same evidence that Plaintiff needs for her to make a prima facie case of prevailing on the merits under the second step in the SLAPP analysis.

**1.    The Evidence Conclusively Shows That Mercury Committed Extortion; Therefore, Its Activities Are Not Protected by the Anti-SLAPP statute**

"Extortion is the obtaining of property or other consideration from another, with his or her consent, . . . induced by a wrongful use of force or fear. . . ." (*Pen. Code*, § 518(a).) "'[C]onsideration' means anything of value." (*Pen. Code*, § 518) "Fear, such as will constitute extortion, may be induced by a threat . . . [t]o expose, or to impute to him, her, or them a deformity, disgrace, or crime." (*Pen. Code*, § 519) "[T]he types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.'" (*Logan*

4

1 *v. Zimmerman Brush Co.* (1982) 455 U.S. 422, 430.) "When a cause of action arises it has a legal

2 value as a chose in action — it is a species of property" protected by the Fourteenth Amendment.

3 (*Werner v. Southern Cal. Etc. Newspapers* (1950) 35 Cal.2d 121, 146; *Barri v. Workers' Comp.*

4 *Appeals Bd.* (2018) 28 Cal.App.5th 428, 461.)

5     "A lawyer shall not threaten to present criminal, administrative, or disciplinary charges to

6 obtain an advantage in a civil dispute." (*Cal. Rule of Prof. Conduct*, rule 3.10) "[T]he policy of

7 the current rule is to prohibit lawyer misconduct that is tantamount to extortion." (Ison Decl, Ex. Y

8 [Commission for the Revision of the Rules of Professional Conduct]) While analyzing the contours

9 of extortion, the Supreme Court characterized violations of Rule 3.10 as extortionate, noting that

10 "[a]ttorneys are not exempt from these principles in their professional conduct." (*Flatley*, at 327.)

11     One week after Ison began asking for proof of Strong's presence at the mediation, Segal

12 told Ison "This has gone far enough . . . . You will likely be disbarred soon for unethical conduct.

13 I have never been wrong." (Ison Decl., ¶ 45, Ex. L)  Disbarment connotes moral turpitude and

14 "manifest dishonesty" in a person who "cannot be relied upon to fulfill the moral obligations

15 incumbent upon members of the legal profession." (*Hallinan v. Committee of Bar Examiners*

16 (1966) 65 Cal.2d 447, 471. For Segal to falsely assert that Ison acted unethically in a manner that

17 warrants disbarment while predicting with 100 percent accuracy that this will occur in the future

18 ("I am never wrong!") is a direct and unequivocal assault on Ison's professional reputation. The

19 threat was clear: if Ison does not relinquish the claim against Kawashima and not cease seeking

20 evidence that would expose Mercury's fraud, Mercury would continue smearing him and instigate

21 proceedings with the California State Bar. The evidence conclusively establishes that Mercury used

22 KSM to extort Kawashima's dismissal in violation of Penal Code § 518.

23     "Extortion is not a constitutionally protected form of speech." (*Id*. at 328.)  Mercury's

24 libelous comments and other misconduct is not immunized from suit by the litigation privilege.

25     **2.  The Evidence Conclusively Shows That Mercury Aided and Abetted KSM's and Diamond's Violations of Business & Professions Code § 6128**

27 "Every attorney is guilty of a misdemeanor who either: [¶] (a) Is guilty of any deceit or

28

5

1  collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."

2  (*Bus. & Prof.*, § 6128.) "[S]ection 6128 evince a legislative intent that certain attorney conduct not

3  be protected from prosecution by the litigation privilege." (*Action v. City of Santa Monica* (2007)

4  41 Cal.4th 1232, 1246.) The direct and circumstantial evidence listed below conclusively prove

5  Plaintiffs' claims arise from Mercury's illegal activities not protected by the anti-SLAPP statute.

### a. Diamond Could Not Provide Plaintiff With A Signed MCA For 27 Hours And Then Lied About the Reason for the Delay

8  Ison was 25 minutes late, yet he was the first to sign the MCA. (Ison Decl., ¶ 33, Ex. E) At

9  10:00 a.m. on December 17th, Ison asked Diamond for the MCA with all signatures; Diamond did

10  not know McGuirk's name and repeatedly referred to Strong as "Ms. Powers". (Ison Decl., ¶ 37,

11  Ex. F) Ison followed up in the afternoon; Diamond claimed his assistant was out and "I don't know

12  how to scan it, so it will have to be tomorrow." (Ison Decl., ¶ 37, Ex. D) On December 18th at

13  12:50 p.m. - 27 hours after being asked - Diamond emailed Ison the MCA with Strong's and

14  McGuirk's signatures. On December 19th, Diamond told Ison: "I made a special trip into my office

15  today to retrieve, **scan** and forward this business card I got from the attending litigation

16  specialist(adjustor) from Mercury insurance" and that "for some reason I had it in my mind that her

17  last name was Powers when, in fact, it is Strong." (Ison Decl., Ex. G)

18  [A]ccording to ordinary evidentiary principles . . ., a lie is evidence of consciousness of

19  guilt. The jury can conclude that" a person who "fabricates a false explanation has something to

20  hide." (*Aka v. Washington Hospital Center* (D.C. Cir. 1998) 156 F.3d 1284, 1293.) "Such an

21  inference is consistent with the general principle of evidence law that the factfinder is entitled to

22  consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" (*Reeves v.

23  Sanderson Plumbing Prods., Inc.* (2000) 530 U.S. 133, 147.) Fabricating a false explanation for

24  the delay in providing a signed MCA is admissible at trial as evidence of all conspirators' guilt.

### b. Strong's "Debit Card Line Item" Proves She Was Not Present

26  Mercury claims that Strong parked at the 3rd and A Street garage. To prove it, Mercury

27  produced Strong's "debit card line item" for a $.50 charge on December 17th. It did not explain

28

6

1    how it proves she was in San Rafael for four hours the day before and why she was charged only

2    \$.50 when the 3rd and A garage charges a minimum of \$1.00 per hour. One does not need Sherlock

3    Holmes-like reasoning power to see that Mercury's evidence does not prove what it says it does.

4    On the contrary, this evidence proves that Strong was in San Rafael the day after the mediation to

5    sign the MCA after learning that Ison was asking for it, i.e., she parked her vehicle at a meter near

6    Diamond's office, signed the MCA and left shortly thereafter so she was charged only \$.50.

### c.    McGuirk's Debit Card Statement Proves She Left Diamond's Office By 10:30 a.m.

9    McGuirk produced a credit card statement showing that she was charged \$1.00 on

10   December 16th for parking at the 3rd and A Street garage. (Ison Decl., Ex. M) It provides clear

11   evidence that if she had been at Diamond's office at all, she left by 10:30 a.m. Hence, her declaration

12   stating she and Strong were at Diamond's office for the entire mediation is false and misleading.

### d.    Suppression of Evidence Proves Its Guilt (CACI 204)

14   "A defendant's willful suppression of evidence, or willful attempt to suppress evidence, is

15   admissible to prove consciousness of guilt." (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1007.)

16   That is an "inference . . . supported by common sense, which many jurors are likely to indulge even

17   without an instruction." (*People v. Holloway* (2004) 33 Cal.4th 96, 142.) Mercury stonewalled

18   Ison before telling him he has "gone far enough" and that he would "likely be disbarred soon for

19   unethical conduct. I have never been wrong" as Mercury attempted to suppress and conceal

20   evidence through a campaign of harassment waged by KSM on its behalf. (Ison Decl., Ex. L)

### e.    Admissions By Silence (*Evid. Code*, § 1221; CACI 213)

22   If "a person is accused of having committed a crime, under circumstances which fairly

23   afford him an opportunity to hear, understand, and to reply . . . and he fails to speak, or he makes

24   an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation

25   may be offered as an implied or adoptive admission of guilt." (*People v. Preston* (1973) 9 Cal.3d

26   308, 313-314.) Plaintiffs' briefs filed in opposition to the Sanctions Motion accuse KSM of

27   perpetrating a fraud on the court; KSM did not file a reply brief addressing allegations of

28

7

1    sender and recipient, time stamp, and delivery status." (Ison Decl., Ex. T)  Ison was able to easily

2    create an authentic looking text message in which Strong says, "Hello Bryana, lets create some fake

3    text messages and pass them off as real." (See Ison Decl., ¶ 53, Ex. U)  Plaintiffs suspect the text

4    messages are fabricated and seek discovery on this issue.

5          i.     **Mercury Withdraws Its Sanctions Motion – An Admission of Guilt**

6          On May 26, 2021, Mercury withdrew its Sanctions Motion rather than have Ison file a

7    motion to compel Strong's testimony under oath and in so doing tacitly admitted that its smears

8    against Ison were false and its motion frivolous.  Mercury's use of aggressive tactics to suppress

9    Strong's deposition and hide evidence shows their level of concern which also provides additional

10   evidence of its guilt.  Plaintiffs' direct and circumstantial evidence, coupled with Mercury's guilty

11   behavior and admissions, conclusively establishes that Mercury aided and abetted KSM's and

12   Diamond's violations of the State Bar Act.

13   C.   **The Litigation Privilege Does Not Provide Blanket Immunity for Every Type of**

14        **Litigation Misconduct – It Has Limits**

15        Civil Code section 47(b)(2) codifies the litigation privilege.  "The usual formulation is that

16   the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2)

17   by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and

18   (4) that have some connection or logical relation to the action. " (*Silberg v. Anderson* (1990) 50

19   Cal.3d 205, 212.)  Mercury cannot satisfy the first, third and fourth elements of the privilege.

20        1.     **First Element: The Gravamen of Plaintiffs' Claims Against Mercury Pertain**
              **to Noncommunicative Conduct Not Covered by the Litigation Privilege**

21        The litigation privilege immunizes litigants from suit arising from their statements and

22   publications; it does not immunize them for their conduct, i.e., noncommunicative acts.  "A

23   threshold issue in determining if the litigation privilege applies is whether the alleged injury arises

24   from a communicative act or noncommunicative conduct." (*Action, supra,* 41 Cal.4th at 1248.)

25   "The distinction between communicative and noncommunicative conduct hinges on the gravamen

26   of the action.  That is, the key in determining whether the privilege applies is whether the injury

27   allegedly resulted from an act that was communicative in its essential nature." (*Rusheen, supra, at*

28

9

1  37 Cal.4th at 1058.) For the privilege to apply, the allegedly "**privileged publication must form**

2  **the basis for the tort**."[2] (*Mouchette v. Board of Education* (1990) 217 Cal.App.3d 303, 313.) In

3  assessing Mercury's Motion, this Court must "draw a careful distinction between a cause of action

4  based squarely on a privileged communication, such as an action for defamation, and *one based*

5  *upon an underlying course of conduct evidenced by the communication*." (*White v. Western Title*

6  *Ins. Co.* (1985) 40 Cal.3d 870, 888 [emphasis added].)

7      The gravamen of Plaintiffs' causes of action against Mercury is twofold. First, it paid a

8  mediator to fake a mediation to fraudulently obtain Kawashima's dismissal and misuse his position

9  of trust as mediator to surreptitiously probe Ison for information that may be advantageous to

10  Mercury. And second, when the fraud was discovered, Mercury tried to strong arm Ison into

11  dismissing Kawashima. This case is defensive in nature and clearly not a SLAPP suit.

12          **2.**    **Mercury Cannot Satisfy the Third and Fourth Elements of the Privilege**

13                **Because the Communications at Issue Did Not Pertain to Matters "Under Consideration" by the Court in the Underlying Personal Injury Action**

14      "For the litigation privilege to apply, there must be a sufficient nexus between the statement

15  and the litigation. Specifically, the statement must 'achieve the objects of the litigation,' which

16  requires that it 'be connected with, or have some logical relation to the action.'" (*Argentieri v.*

17  *Zuckerberg* (2017) 8 Cal.App.5th 768, 785-86.) "[I]t follows that the 'connection or logical

18  relation' which a communication must bear to litigation in order for the privilege to apply, is a

19  functional connection. That is to say, the communicative act - be it a document filed with the court,

20  a letter between counsel or an oral statement - must function as a necessary or useful step in the

21  litigation process and must serve its purposes." (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134,

22  1146.) "*Silberg's* 'furtherance' test is to serve its purpose, the test can be satisfied only by

23  communications which function intrinsically, and apart from any consideration of the speaker's

24  intent, to advance a litigant's case." (*Id,* at 1148.) "This is a very different thing from saying that

25  the communication's content need only be related in some way to the subject matter of the litigation"

26

27  [2] Plaintiff discusses the litigation privilege in greater depth in its opposition to Defendant's demurrer which was filed concurrently with the present motion. Those arguments augment what is stated here and are incorporated by reference as thought set forth in full herein.

28                                      10

1   (*Id.* at 1146.)

2        *Silberg's* "relevancy requirement" means that "section 47(b) does not prop the barn door

3   wide open for any and every sort of . . . charge or innuendo, especially concerning individuals."

4   (*Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140, 150.) "[T]he privilege is not a

5   blanket protection to shield all of a speaker's potentially gratuitous, harmful, or defamatory

6   statements in a communication, even if sent during the course of litigation, when the statement

7   bears no relation to subject matter of the litigation." (*Appel v. Wolf* (S.D. Cal. 2019) Case No.:

8   3:18-cv-814-L-BGS, p. 9.) "Even when a document broadly relates to litigation, it may contain

9   unrelated parts that do not find shelter in the privilege." (*Dziubla v. Piazza* (2020) 59 Cal.App.5th

10  140, 142-43.) "[E]nforcing the relevancy requirement does not narrow the litigation privilege, but

11  rather prevents its abuse." (*Id.* [emphasis added])

12       For example, in *Paul v. Friedman* (2002) 95 Cal.App.4th 853, an attorney moved to strike

13  causes of action alleging that in prior litigation he had conducted an intrusive investigation into

14  plaintiff's personal life and disclosed personal details about his life irrelevant to the underlying suit.

15  (*Id.* at pp. 857-858, 866.) The attorney invoked the litigation privilege. (*Id.* at p. 865.) The Court

16  of Appeal noted that "it is insufficient to assert that the acts alleged were 'in connection with' an

17  official proceeding. There must be a connection with an issue under review in that proceeding." (*Id.*

18  at 867.) Hence, the Court held that the attorney's conduct was not protected by the litigation

19  privilege because the attorney's conduct was not in connection with an "issue under consideration

20  or review" in that proceeding. (*Id.* at pp. 867, 868.)

21       Mercury may claim that by conspiring with its attorney and corrupting a mediator to put on

22  a "dog and pony" to deceive Ison it was taking "necessary or useful step[s] in the litigation process"

23  that "serves its purposes" – a very warped view of the statute that does not comport with the law.

24  **D.    Mediation Confidentiality Does Not Apply Here or in the Underlying Case Because
        Mercury Cannot Establish The Statutory Requirements For Invoking the Protection**

25

26       Mediation confidentiality bars disclosure of "***specified*** communications and writings"

27  associated with mediation "absent an express statutory exception." (*Rojas v. Superior Court* (2004)

28

11

33 Cal.4th 407, 416.) But "the factual contents of a conversation or writing are not automatically deemed confidential simply because they are included in a mediation communication." (*Lappe v. Sup. Court* (2014) 232 Cal.App.4th 774, 783.) Two thresholds must be met. First, the party must show that the proceeding at issue is "a mediation, within the meaning of section 1115." (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 138 n.12.) Second, the statements and writings must have been made "for the purpose of, in the course of, or pursuant to, a mediation." (*Evid. Code*, § 1119.)

1.    **Evidence Code § 1115: Diamond Conspired With Mercury and KSM To Perpetrate a Fraud On Plaintiff; Hence, He Was Not "Neutral"**

Evidence Code section 1115, subdivision (a) defines "Mediation" as "a process in which a *neutral person* or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." (Emphasis added.) Subdivision (b) defines a "Mediator" as "a *neutral person* who conducts a mediation." (*Evid. Code*, § 1115(b) [emphasis added].) It follows that if the person acting as a "mediator" is not neutral, that proceeding is not a "mediation" within the ambit of mediation confidentiality. For example, in *Saeta v. Sup. Court* (2004) 117 Cal.App.4th 261, a discharged employee was contractually entitled to proceedings before a "termination review board" ("Board") empowered to take evidence and report to the home office whether the discharge should be upheld. (*Id.* at p. 265.) It was composed of an employer representative, an employee representative, and a "neutral" third member. The Board upheld the firing; the employee sued. At deposition, the "neutral" third member "refused to answer questions about what occurred at the hearing, about statements made before the review board, or about whether he thought the procedure set forth in the agreement had been followed." (*Id.* at 265-66.)

The *Saeta* Court cited Section 1115 in ruling that "at a minimum" mediation requires "a neutral mediator or group of mediators and have as its aim to facilitate a mutually acceptable result. These two prerequisites are absent from the review board here. Apart from petitioner, this review board was comprised of two others, both employees of Farmers. An attorney or other *representative of a party is not a mediator*." (*Id.* at 271 [italics in original].) The "proceeding, as constituted" was not a mediation, because the Board members were not impartial; it follows that their

12

1    "statements are not protected" by Evidence Code section 1119." (*Id.* at 264-65.)

2    Diamond's primary "aim" was not to resolve the case: it was to deceive Ison so Mercury

3    could fraudulently obtain Kawashima's dismissal and he could use his position of trust to

4    surreptitiously probe Ison for weaknesses in his case and obtain information helpful to Mercury.

5    He was not a mediator and what occurred at his office was not a "mediation" under Section 1115.

6
7    **2.    Evidence Code § 1119: Statements and Writings Must Be "Materially Related" to the "Purposes of Mediation; Incidental Statements and Writings Do Not Warrant Confidentiality**

8    Evidence Code § 1119 provides that no "evidence" or "writing" that is made or prepared

9    "for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is

10   admissible or subject to discovery, and disclosure of the evidence [or writing] shall not be

11   compelled in any . . . civil action, or other noncriminal proceeding in which . . . can be compelled

12   to be given." Section 1120 provides that "[e]vidence otherwise admissible or subject to discovery

13   outside of a mediation . . . shall not be or become inadmissible or protected from disclosure solely

14   by reason of its introduction or use in a mediation or a mediation consultation." (*Evid. Code*, §

15   1120.) Sections 1119 and 1120 must be "[r]ead together" as section 1120 puts a "'limit' on 'the

16   scope of [s]ection 1119' that 'prevents [parties] from using a mediation as a pretext to shield

17   materials from disclosure.'" (*Rojas, supra*, 33 Cal.4th at p. 417, citations omitted.)

18   "Thus, the confidentiality rule in section 1119 encompasses communications [and writings]

19   by participants . . . that are ***materially related to the purpose of the mediation . . . .***" (*Eisendrath v.*

20   *Superior Ct. of Los Angeles* (2003) 109 Cal.App.4th 351, 364.) "[T]he timing, context, and content

21   of the communication all must be considered." (*Wimsatt, supra,* 152 Cal.App.4th at 160.) "The

22   burden is on the party invoking confidentiality to show a material relationship linking the evidence

23   to the mediation or mediation consultation." (Knight et al., *Cal. Practice Guide: Alternative*

24   *Dispute Resolution* (The Rutter Group 2021) ¶ 3.100.18e.)

25   Plaintiffs do not seek Mercury's analysis, strategy and opinion work product; he will only

26   seek communications and writings that pertain to the conspirators' coordination and execution of

27   their scheme; hence, he should not be precluded from obtaining admissible evidence.

28
                                              13

E.    **SLAPP Analysis - Step One: Plaintiffs' Causes of Action Against Mercury Do Not Arise from Mercury Engaging in Protected Activities**

In ruling on an anti-SLAPP motion, "[f]irst, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; (§ 425.16, subd. (b)(1).) As discussed below, Mercury cannot meet its initial burden.

1.    **Plaintiff's Complaint Did Not Arise From Protected Activity in Connection With A Matter "Under Review"**

"[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266.) "The statement or writing need not be made before the official body. But a nexus is required between the statement or writing and an issue under consideration by the public body." (Weil & Brown, ¶ 7:654; CCP §425.16(e)(2).) "The anti-SLAPP statute does not apply where protected activity is only collateral or incidental to the purpose of the transaction or occurrence underlying the complaint." (*Cal. Back Specialists v. Rand* (2008) 160 Cal.App.4th 1032, 1037.) "[T]hat a cause of action arguably may have been 'triggered' by protected activity does not entail it is one arising from such. (*Navellier, supra,* at 89.) "Thus, where a plaintiff's claim is based upon 'an action or decision' of the defendant, it is not enough that some protected activity by the defendant precedes that action or decision, that some protected activity is the means of communicating that action or decision, or that some protected activity constitutes evidence of that action or decision. To fall under the anti-SLAPP statute, the challenged action or decision itself must be protected activity." (*Mission Beverage Co. v. Pabst Brewing Co.* (2017) 15 Cal.App.5th 686, 700-1.)

"Not all attorney conduct in connection with litigation, or in the course of representing

14

clients, is protected by section 425.16." (*Cal. Back Specialist, supra* at 1037.)  To warrant the statute's protection "attorney conduct" at issue must "be 'in connection with an 'issue under consideration or review' in that proceeding." (*Neville, supra*, at 1264.)  Plaintiffs' claims against Mercury do not arise from KSM defending Kawashima through legitimate means in the underlying action; they arise from the fraud, extortion, and defamation that corrupted the mediation process – these are not activities protected by the anti-SLAPP statute.

F.    **Second Step: Plaintiffs Can Establish a Probability of Prevailing With Admissible Evidence and Legally Sufficient Claims**

If the defendant shows that the complaint is based on protected activities, "the burden shifts to the plaintiff to establish a probability he or she will prevail on the claim at trial, i.e., to proffer a prima facie showing of facts supporting a judgment in the plaintiff's favor." (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087.)  Mercury's primary defense is that the litigation privilege renders inadmissible the discovery, letters and filings generated by the underlying action.

As explained in greater depth in Plaintiffs' opposition to Mercury's demurrer, which is incorporated by reference herein, "it is quite clear that section 47(2) has never been thought to bar the evidentiary use of every 'statement or publication' made in the course of a judicial proceeding: answers to interrogatories or to questions at depositions are, for example, routinely admitted into evidence and relied on in determining liability even though they are clearly 'statements made in the course of a judicial proceeding.'" (*Oren Royal Oaks Venture v. Greenberg, Bernard, et al.* (1986) 42 Cal.3d 1157, 1168.)  Plaintiffs' evidence is clearly admissible irrespective of Mercury's meritless objections.  In Section II.B.2(a-j), Plaintiffs described the evidence that conclusively establishes Mercury's criminal conduct in the underlying case that Mercury either directly participated in or was ratified by Petro.  Hence, Mercury's Motion must be denied.

Dated: May 27, 2021                                    THE ISON LAW FIRM, PC

                                                       _____
                                                       James J. Ison, Esq.
                                                       Attorney for Plaintiffs

EXHIBIT O

James Ison

| | |
|---|---|
| **From:** | Contestdept302tr <Contestdept302tr@sftc.org> |
| **Sent:** | Friday, July 9, 2021 2:00 PM |
| **To:** | James Ison; tdrakeford@kernlaw.com |
| **Subject:** | RE: Line 4 (Ison v. Mercury Ins., 589080) |

Counsel:

Due to the court website's character limitations, we are emailing the parties directly with the below tentative ruling in its entirety for the matter set for hearing on July 12, 2021 at 9:30 a.m. in Dept. 302.

Thank you,
Dept. 302 Clerk

1-DEMURRER to Amended COMPLAINT
Tentative Ruling:

Off calendar in light of the ruling on the companion motion.

2-MOTION TO STRIKE Amended COMPLAINT
Tentative Ruling:

Defendants Mercury General Corporation and Randall Petro's anti-SLAPP motion to strike is granted in its entirety. Plaintiffs James J. Ison and the Ison Law Firm, PC ("Plaintiff")'s supplemental request for judicial notice of the complaint lodged by him against defense counsel with the State Bar of California is denied as late-filed and irrelevant to the issues presented on the motion.

Defendants meet prong one of the anti-SLAPP statute because the First Amended Complaint ("FAC") arises from protected activity under Code of Civil Procedure section 425.16(e)(2) ["any written or oral statement or writing made in connection with an issue under consideration or review by a…judicial body"].) The FAC is based on allegations concerning defendants' communications and other conduct in protected litigation activity in the underlying San Mateo County personal injury motor vehicle action, specifically in connection with a mediation in that action, defendants' request that plaintiffs dismiss a named defendant in that action, communications in connection with a discovery dispute, and defendants' filing of a sanctions motion. (See, e.g., FAC, ¶ 91 ["Defendants used the Mediation procedure and their motion for sanctions filed in the underlying action to fraudulently obtain the dismissal of Kawashima and harass Plaintiff into dismissing him."]; *id.* ¶ 101 ["Defendants made express representations regarding Strong's and McGuirk's physical presence at Mediation that were false and misleading."].

There can be no question that settlement negotiations and agreements are made "in connection with" litigation for purposes of the anti-SLAPP statute. (See, e.g., *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 [applying anti-SLAPP statute to claim based on false statements during negotiation]; *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, 123 [anti-SLAPP statute protects fraudulent promises made during the settlement process]; *Optional Capital Inc. v. Akin Gump Strauss. Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113-114 [communications made during settlement negotiations implicate anti-SLAPP statute].) As these cases make clear, the statute applies "even against allegations of fraudulent promises made during the settlement process" (*Suarez*, 3 Cal.App.5th at 123) and settlement negotiations allegedly conducted in bad faith or for an unlawful purpose. (See *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 964-967 [plaintiff

1

claimed her insurer's attorney secretly negotiated settlement with third party that deprived plaintiff of insurance coverage].)

Case 2:21-cv-01546-JAM-KJN    Document 14    Filed 08/27/21    Page 35 of 36

Plaintiffs' argument that defendants do not meet prong one because their conduct was "conclusively" illegal fails.  (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 316.)  *Flatley*'s holding that the anti-SLAPP statute cannot be invoked by a defendant whose assertedly protected activity was illegal as a matter of law is limited to cases where "*either the defendant concedes, or the evidence conclusively establishes*, that the assertedly protected speech or petition activity was illegal as a matter of law." (*Id.* at 320 (emphasis added); see also *Belen v. Ryan Seacrest Productions, LLC*, 2021 WL 2659755 (June 29, 2021) at *7 ["Illegal conduct as matter of law under *Flatley* must be based on a defendant's concession or on uncontroverted and conclusive evidence—neither of which is present at this stage of the proceedings"].)  If plaintiff claims that defendant's speech or petitioning activity is illegal and thus not protected, "plaintiff bears the burden of conclusively proving the illegal conduct."
(*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 385.)

"Not only did [defendants] not concede criminal conduct, but we do not find this to be one of those rare cases in which there is uncontroverted and uncontested evidence that establishes the crime as a matter of law." (*Id.* at 386.)  In *Flatley*, the court found conclusive illegality because the communications threatened to accuse Flatley of a crime unless a $1 million payment was made.  Here, plaintiff fails to conclusively establish that defendants engaged in extortion in violation of Penal Code section 518.  None of the defendants obtained any consideration through the wrongful use of force or fear.  Rather, Mr. Segal merely stated (in the context of a discovery dispute) that plaintiff Ison was making misrepresentations and "[y]ou will likely be disbarred soon for unethical conduct. I have never been wrong." (FAC ¶ 77 & Ex. A; Segal Decl. ¶ 8.)  Mr. Segal never threatened to report plaintiff nor did he seek anything in return.  *Malin v. Singer* (2013) 217 Cal.App.4th 1283 is controlling.  There, the court held that a demand letter that accused plaintiff of sexual misconduct but "made no overt threat to report [plaintiff] to prosecuting agencies" did not fall under "the narrow exception articulated in *Flatley* for a letter so extreme in its demands that it constituted criminal extortion as a matter of law." (*Id.* at 1299; see also *Cross*, 197 Cal.App.4th at 386-387 [*Flatley* not applicable where communications were neither admitted extortion nor were extortion as a matter of law, because information for which disclosure was threatened (location of registered sex offender) was public information, not a secret]; *Seltzer*, 182 Cal.App.4th at 965 [*Flatley* exception not applicable to assertedly unlawful settlement negotiations where plaintiff failed to demonstrate the absence of relevant factual disputes].)  Plaintiff also fails to conclusively establish illegal deceit pursuant to Business & Professions Code section 6128.  Defendants proffer evidence that contrary to plaintiff's unsupported "sham mediation" claim, counsel and Ms. Strong (unlike plaintiff's client, Ms. Talens) in fact were physically present at the mediation. (Diamond Decl., ¶¶ 3-10; McGuirk Decl., ¶¶ 8, 15; see *Seltzer*, 182 Cal.App.4th at 965 [rejecting argument that defendant's negotiation of settlement violated section 6128 where defendant's intent was a disputed factual issue].)

Since defendants meet prong one, the plaintiff must establish via admissible evidence a probability of prevailing on the claims (prong two). (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 81; *Computer Xpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.)  "A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim." (*Malin*, 217 Cal.App.4th at 1300 (quoting *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 888 [holding that plaintiff's extortion claim was barred by litigation privilege].)  Here, plaintiff cannot establish that his claims have even minimal merit because they are barred by the litigation privilege.

To prevail on a claim for abuse of process, plaintiff must establish:  "'First, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding.'" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App 4th 857, 884-885 [citing *Oren Royal Oaks Venture v. Greenberu. Bernhard. Weiss & Karma. Inc.* (1986) 42 Cal.3d 1157, 1168].)  Here, the litigation privilege bars the abuse of process claim, which is based on allegedly fraudulent statements made during the mediation process and defendants' filing of a motion for sanctions.  The gravamen of plaintiffs' claims is that defendants falsely represented that the adjuster and counsel would physically appear at the impartial mediation.  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the

litigation; and cases that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) "Any doubt about whether the privilege applies is resolved in favor of applying it." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.)  The privilege also "extends to noncommunicative acts that are necessarily related to the communicative conduct... unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1065.)  The mediation was part of the underlying *Talens* tort action.  "Statements made in the course of litigation are subject to the privilege set forth in Civil Code section 47, subdivision (2) (currently Civ. Code, § 47, subd. (b)) and cannot provide the basis for an abuse of process action." (*Cantu*, 4 Cal.App.4th at 886; see FAC, ¶ 29 [describing "agreement" parties entered into where counsel and adjuster would be physically present at the mediation], ¶ 43 [describing mediator Diamond's representations], ¶¶ 52, 64 [describing breached mediation agreement], ¶¶ 65 & 67 [describing defendant's improper motion for sanctions and fraudulent misrepresentations], ¶ 91 [describing fraudulent use of mediation procedure and motion for sanctions], ¶ 101 [misrepresentations regarding mediation]; Ison Decl. [describing communications regarding the mediation].)  In any event, plaintiff's evidence is speculative and does not support a prima facie case for the claim. (See Ison Decl. ¶ 38 [detailing plaintiff's "susp[icion]" that he was "the only part who actually attended the mediation"].)

The same is true for plaintiff's other claims.  The essential elements for an intentional infliction of emotional distress claim are well established: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.)  As noted, defendants' statements regarding the mediation were privileged even if they were false. (*Cantu*, 4 Cal.App.4th at 888 ["[H]e can state no cause of action for intentional infliction of emotional distress, even if the defendants submitted perjurious and malicious declarations or pleadings."].)  Plaintiff also fails to present any evidence showing "extreme and outrageous" conduct or severe emotional distress.

The speculative Ison Decl. does not present a prima facie case for fraud.  In any event, the adduced false statements are privileged.  A claim for fraud or deceit must show a false representation as to a material fact, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage. (See *Lazar v. Superior Court* (1996) 12 Cal. 4th 631, 638.)  It is unclear when or if plaintiff ever dismissed Kawashima, which was the alleged consideration/detrimental reliance.  Indeed, plaintiff contested the legitimacy of the mediation and refused to dismiss him without further proof. (See Ison Decl., ¶¶ 38-46.)

Lastly, the UCL claim (which plaintiff does not address) fails based on the litigation privilege and plaintiff does not demonstrate standing to pursue the claim.  There is no evidence regarding any money or property plaintiff allegedly lost as a result of the alleged unfair business practice; the "injury in fact" is unclear. (See *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320-321.)

Effective Monday, June 28, 2021, for the 9:30 a.m. Law & Motion calendar, attorneys and parties may appear either in person in Department 302 or remotely by videoconference using Zoom.  To appear remotely at the hearing, go to the court's website at sfsuperiorcourt.org under "Online Services," navigate to "Tentative Rulings," and click on the appropriate link, or dial the corresponding phone number.

Any party who contests a tentative ruling must send an email to contestdept302tr@sftc.org with a copy to all other parties by 4pm stating, without argument, the portion(s) of the tentative ruling that the party contests.  The subject line of the email shall include the line number, case name and case number.  The text of the email shall include the name and contact information, including email address, of the attorney or party who will appear at the hearing.  Counsel for the defendants is required to prepare a proposed order which repeats verbatim the substantive portion of the tentative ruling and must email it to contestdept302tr@sftc.org prior to the hearing even if the tentative ruling is not contested.