EXHIBIT P

1                    SUPERIOR COURT OF CALIFORNIA

2                      COUNTY OF SAN FRANCISCO

3    BEFORE THE HONORABLE ETHAN P. SCHULMAN, JUDGE PRESIDING

4                     DEPARTMENT NUMBER 302

5                          ---oOo---

6    JASON J. ISON, THE ISON LAW           )
     FIRM, P.C.,                           )
7                                          )    **ELECTRONIC COPY**
              Plaintiffs,                  )    Case No. CGC-20-589080
8                                          )    **LAW AND MOTION**
     vs.                                   )
9                                          )    Pages 1 - 12
     MERCURY INSURANCE; MERCURY GENERAL    )
10   CORPORATION; KERN SEGAL & MURRAY;     )
     PHILIP A. SEGAL, RANDALL R. PETRO;    )
11   and DOES 1 through 100, inclusive.    )
                                           )
12            Defendants.                  )
                                           )
13   ──────────────────────────────────────

14          **Reporter's Transcript of Proceedings**

15              Monday, July 12, 2021

16   **APPEARANCES OF COUNSEL:**

17   For **Plaintiffs JAMES J. ISON AND THE ISON LAW FIRM, PC:**

18        THE ISON LAW FIRM
          333 University Avenue, Suite 200
19        Sacramento, California  95825
          jason@jisonlaw.com
20        By:  **JASON J. ISON, Attorney at Law**

21

22   For **Defendants MERCURY GENERAL CORPORATION** and **RANDALL R. PETRO:**

23        KERN SEGAL & MURRAY
          15 Southgate Avenue, Suite 200
24        Daly City, California  94015
          (415)  474-1900
25        By:  **TODD P. DRAKEFORD, Attorney at Law**
               [Via Zoom Video]

26

27     GOVERNMENT CODE § 69954(d) RESTRICTS COPYING TRANSCRIPT

28   **Reported by ROSE M. MILLER, CSR #5041, RPR, CRR, CCRR, CRC, CRG**

<u>**P R O C E E D I N G S - A.M. S E S S I O N**</u>

**Monday, July 12, 2021**

---oOo---

1    (Whereupon, the following proceedings were held in open

2    court.)

3        THE COURT:  Finally, Line 4, Ison versus Mercury

4    Insurance.

5        MR. ISON:  Good morning, Your Honor.

6        Jason Ison, on behalf of the Plaintiffs.

7        THE COURT:  Good morning.

8        MR. DRAKEFORD [VIA ZOOM VIDEO]:  Good morning, Your

9    Honor.

10       Todd Drakeford, on behalf of the Defendants.

11       THE COURT:  Good morning.

12       This is an anti-SLAPP motion.  The tentative is to

13   grant the motion.

14       And, Mr. Ison, I understand you are contesting the

15   tentative.

16       MR. ISON:  Yes, Your Honor.

17       THE COURT:  Go ahead.

18       MR. ISON:  Your Honor, before we start, I have a

19   long-standing back problem that just makes it difficult for

20   me to stand in one place for long.  May I --

21       THE COURT:  Feel free to sit, sure.

22       Thank you.

23       MR. ISON:  Thank you.

24       Should I move the microphone down to the table?

25       THE COURT:  Yes.  For Mr. Drakeford's benefit and

1   the court reporter's benefit, not to mention my own.

2        **MR. ISON:**  Thank you.

3        **THE COURT:**  I'll just preface the argument by saying

4   that I did circulate a lengthy tentative ruling to both

5   counsel in writing in advance of the hearing.  As it

6   reflects, I have reviewed all of the briefing.  I'm

7   familiar with the issues, so please direct your argument

8   accordingly.

9        **MR. ISON:**  Yes, Your Honor.

10       Thank you for the hearing.

11       I just wanted to start with the proposed order that

12   was submitted before we move on to the argument.  I just --

13   I had -- the tentative ruling had said for it to repeat

14   the -- or to repeat verbatim the Court's ruling.

15       **THE COURT:**  I know where you are going and I'm going

16   to tell you what I have done already.

17       **MR. ISON:**  Okay.

18       **THE COURT:**  The final line indicates that the motion

19   for attorney's fees and costs is granted subject to a

20   determination in the amount.  That is not the Court's

21   ruling.  That motion must be brought.  So, I have changed

22   that language to indicate that the Defendants may bring a

23   motion in accordance with 425.16, I think it is subdivision

24   (G) or (J), I always forget.  But, in any event, but

25   that -- I have already fixed that.

26       **MR. ISON:**  Thank you, Your Honor.  That was the

27   first --

28       And then the other sentence above that that is

1    added, I just -- I don't mean to quibble over the words,

2    but it sounds like the whole complaint is dismissed.  It is

3    with respect to Mercury and Randall Petro, but not to the

4    other parties.  And I just -- the Court might look at that

5    and just clarify that in its final ruling.

6         **THE COURT:**  Okay.

7         Let's deal with the merits.

8         **MR. ISON:**  Your Honor, yesterday I filed a request

9    for a statement of decision.  Did the Court receive that?

10        **THE COURT:**  I did not, but the lengthy tentative

11   ruling that you have, assuming I adopt it, it seems to me

12   resolves all of the material issues before me and should

13   suffice.

14        **MR. ISON:**  Well, I would ask that the Court look at

15   the request.  I, you know, I have the requested findings

16   but also the legal authority as to why a statement of

17   decision would be appropriate in this case.

18        If the Court is just denying that request now --

19        **THE COURT:**  In general, Mr. Ison, a law and motion

20   judge is not required to issue a statement of decision on a

21   contested matter with a few exceptions, such as a motion to

22   compel or deny -- a motion to compel arbitration.  I'm not

23   aware of any requirement that I issue a written statement

24   of decision in connection with an anti-SLAPP motion.  If

25   I'm wrong with that, I'm happy to be corrected.

26        **MR. ISON:**  Well, there are -- and what Your Honor

27   said is correct.  I look at the *Lucky Lien* case.  There are

28   exceptions where certain criteria are met and it's

1    contextual.  You know, the Court -- whatever the Court

2    decides, whether it is the right decision or the wrong

3    decision, whether exceptions should apply or not apply will

4    ultimately be decided by the Court of Appeal.  But I would

5    just ask the Court to look at that request and the legal

6    authorities that I submitted.

7            **THE COURT:**  I'll take a look at them.

8            **MR. ISON:**  Thank you, Your Honor.

9            As to the tentative ruling, I -- as I read it, I

10   guess if I knew nothing about this case and I were to read

11   it I would have no idea what the Plaintiff's claims are

12   based on or the specific facts.  There is no reference to

13   the evidence that was submitted.  There are no findings on

14   whether certain evidence was deemed admissible or

15   inadmissible.  There was no reference that the thrust of

16   Plaintiff's opposition to the motion was that the

17   Defendants had not satisfied the first, third and fourth

18   elements of the litigation privilege.  And Your Honor's

19   ruling is based I would say entirely or almost entirely on

20   the litigation privilege immunizes the Defendants from the

21   conduct at issue.

22           And, so -- and that's, you know, what prompted me to

23   ask for a statement of decision that makes findings on

24   these issues.  I don't -- as far as the Silver formulation

25   of the litigation privilege, the four elements, I don't

26   think is ever cited.  I don't believe there is any

27   discussion about --

28           **THE COURT:**  What do you mean it is not cited?  It is

1  quoted and cited, sir.

2      **MR. ISON:**  If I missed the -- where it says that the

3  third and fourth elements are listed?

4      **THE COURT:**  "To achieve the objects of the

5  litigation and that have some connection or logical

6  relation to the action."

7      **MR. ISON:**  Okay.  I didn't see --

8      **THE COURT:**  Right in there.

9      **MR. ISON:**  Okay.  I didn't see any specific factual

10  findings on that issue.

11      **THE COURT:**  I'm not here to make factual findings.

12  This isn't a court trial, sir.  This is a motion.  And as I

13  have indicated, I have read everything.  And you have my

14  tentative ruling before you.

15      If you want to quibble with how I have phrased it,

16  I'm respectfully suggesting to you that is a waste of your

17  time and mine.  If you want to talk about the merits, that

18  is what we're here for.

19      **MR. ISON:**  Okay.

20      Well, again, you know, the evidence, you know, that

21  was provided by Plaintiffs was not cited.

22      I would just -- and I'm probably going to wrap this

23  up in a minute or two, Your Honor.

24      **THE COURT:**  Go ahead.

25      **MR. ISON:**  I would just say that -- I would refer

26  the Court to -- in Plaintiff's opposition brief where the

27  standard for assessing the evidence in an anti-SLAPP

28  motion, and I'm citing from *HMS Capital v Lawyers*

1  *Title*, 118 Cal.App.4th 204.

2      It says, "The Courts consider the pleadings and

3  evidence submitted by both sides.  It does not weigh

4  credibility or compare the weight of the evidence.  Rather,

5  the Court's responsibility is to accept as true the

6  evidence favorable to the plaintiff and evaluate the

7  defendant's evidence only to determine if it has defeated

8  arguments submitted by the plaintiff as a matter of law."

9      And as I read the ruling, what sounded to me like

10  that the evidence had been construed in favor of the

11  Defendant or construed as true as to what was submitted by

12  Defendant.

13      **THE COURT:**  Well, let's cut to the chase here.

14  First of all, the standard that you just quoted is accurate

15  as far as it goes.  It does not, however, apply to the

16  *Flatley* test, F-L-A-T-E-L-Y, I think, which provides that

17  the anti-SLAPP statute does not invoke -- cannot be invoked

18  by a defendant whose protected activity or alleged

19  protected activity was illegal as a matter of law.  In

20  those cases, as the tentative indicates, the evidence must

21  conclusively establish that claim of illegality.  So, the

22  general standard that you have just cited doesn't apply.

23      Secondly, when it comes to the record here as

24  regards to litigation privilege, the evidence that I have

25  here -- I mean, let's be clear:  I understand what your

26  claim is.  Your claim is that this was a sham mediation

27  because you insisted at the height of the COVID pandemic

28  that all parties be physically present.  You were

1   physically present, although your client was not.  And you

2   claim that despite the sworn declaration of the mediator

3   and of the Defendants to the contrary, that they weren't

4   physically present and that you were somehow defrauded as a

5   result.

6           That's the gist of your claim, right?

7           **MR. ISON:**  Yes, Your Honor.

8           **THE COURT:**  All right.

9           So, the evidence that I have before me on that

10  subject, as I have indicated, is sworn declarations from

11  the mediator and from the Defendant's representative, and I

12  believe from their counsel as well, I don't recall at this

13  point --

14          **MR. DRAKEFORD [VIA ZOOM VIDEO]:**  That is correct.

15          **THE COURT:**  -- indicating that they were present at

16  the mediation.

17          What I have from you is no admissible evidence to

18  the contrary.  I have got a bunch of speculation.  I have

19  got a bunch of inferences that you want me to draw from

20  dubious circumstantial evidence.  You are basically asking

21  me to accept what I think anybody would characterize as a

22  conspiracy theory here based on virtually nothing.  So,

23  explain to me why I should do that.

24          **MR. ISON:**  Well, the Defendants unwillingness and

25  inability to produce records, even just a parking receipt

26  showing that they had been there.  They --

27          Did the Court consider the fact that they produced a

28  debit line credit debit card line --

1    **THE COURT:**  I saw the reference to the 50-cent debit

2    card, yes, sir.

3    **MR. ISON:**  Dated for the day after the mediation.

4    You saw that, Your Honor?

5    **THE COURT:**  I did.

6    **MR. ISON:**  Does Your Honor have an explanation as to

7    why or how that --

8    **THE COURT:**  I'm not here to explain anything, sir.

9    You are here to me to explain why you are contesting the

10   tentative ruling.

11   **MR. ISON:**  Well, because evidence like that that was

12   apparently not considered or did not make its way into the

13   tentative ruling.

14   **THE COURT:**  All of the evidence was considered, sir.

15   **MR. ISON:**  Okay.

16   I'm just -- I have just an eye to facilitating

17   appellate review and doctrine of implied findings.  I just

18   wanted to make as clear a record as we can for the

19   appellate court, but, you know, I understand you are not

20   changing your tentative ruling.

21   I just have two more.  There was a request for

22   judicial notice that was submitted on June 3rd that was

23   not referenced in the tentative ruling.  And I just --

24   **THE COURT:**  What were the subjects of that request

25   for judicial notice?

26   **MR. ISON:**  Statutes.  Some of the case filings.  I

27   don't have -- there was a list of things.  I don't have it

28   memorized, but it is --

1      **THE COURT:**  Well, there is certainly no need to seek

2  judicial notice of statutes if they are California

3  statutes.  You can simply cite that authority.

4      **MR. ISON:**  All I'm asking is that the Court put its

5  ruling on regarding the request for judicial notice.

6      **THE COURT:**  If it is material to the ruling, I will.

7  If it isn't, I won't.

8      **MR. ISON:**  Okay.

9      And there was also objections to the evidence

10  submitted by the Defendants in reply, and I was going to

11  ask the Court to --

12      **THE COURT:**  To the extent I have cited evidence

13  submitted by Defendants, you can assume those objections

14  were overruled.

15      To the extent I haven't, you can assume that that

16  evidence wasn't material to my ruling.

17      **MR. ISON:**  Okay, Your Honor.

18      That is all I have.

19      **THE COURT:**  All right.

20      Mr. Drakeford, would you like to respond to anything

21  that Mr. Ison just said?

22      **MR. DRAKEFORD [VIA ZOOM VIDEO]:**  Your Honor, I

23  believe that Your Honor has handled the issue quite well

24  with a very deft hand and I have no comment.

25      **THE COURT:**  All right.

26      I'm going to take the matter under submission in

27  order to look at Mr. Ison's request for statement of

28  decision, which I have not received but may be in the

1   electronic docket.

2        **MR. ISON:**  I have a copy here if you would like.

3        **THE COURT:**  Why don't you leave that behind with the

4   clerk, if you don't mind.

5        **MR. ISON:**  Sure.  I will do that.

6        **THE COURT:**  I will also take another look at the

7   evidentiary objections and the request for judicial notice,

8   although I will state for the record, I highly doubt they

9   will affect my decision on the merits.

10       **MR. ISON:**  I believe that is probably true, Your

11  Honor.

12       **THE COURT:**  Matter is under submission.

13       Thank you.

14       **MR. ISON:**  Thank you, Your Honor.

15       **MR. DRAKEFORD [VIA ZOOM VIDEO]:**  Thank you, Your

16  Honor.

17            (Whereupon, proceedings were adjourned.)

18                        --oOo--

19

20

21

22

23

24

25

26

27

28

1  State of California                    )
2  County of San Francisco                )
                                          )

3

4      I, Rose M. Miller, Official Court Reporter for the
5  Superior Court of the State of California, City and County of
6  San Francisco, do hereby certify:
7      That I was present at the time of the above proceedings;
8      That I took down in machine shorthand notes all proceedings
9  had and testimony given;
10      That I thereafter transcribed said shorthand notes with the
11  aid of a computer;
12      That the above and foregoing is a full, true, and correct
13  transcription of said shorthand notes, and a full, true and
14  correct transcript of all proceedings had and testimony taken;
15      That I am not a party to the action or related to a party
16  or counsel;
17      That I have no financial or other interest in the outcome
18  of the action.
19
   Dated: July 19, 2021
20
21
22
23
24
25
26
27
28  ROSE M. MILLER, CSR NO. 5041, RPR, CRR, CRC, CRG

EXHIBIT Q

1
James J. Ison (SBN 209116)
The Ison Law Firm, PC
2
333 University Avenue, Ste. 200
Sacramento, CA 95825
3
Telephone: (916) 565-7677
Facsimile: (916) 929-0448
4
james@jisonlaw.com

5
Attorneys for Plaintiffs James J. Ison and
The Ison Law Firm, PC
6

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**07/12/2021**
**Clerk of the Court**
BY: SANDRA SCHIRO
Deputy Clerk

7
## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8
## FOR THE COUNTY OF SAN FRANCISCO

9

| | |
|---|---|
| 10  JAMES J. ISON, THE ISON LAW FIRM, PC | **CASE NO: CGC-20-589080** |
| 11  Plaintiffs, | **PLAINTIFFS' REQUEST FOR STATEMENT OF DECISION [CODE OF CIVIL PROCEDURE §§ 632, 634;** |
| 12  v. | **CALIFORNIA RULE OF COURT, RULE 3.1590]** |
| 13  MERCURY INSURANCE, MERCURY GENERAL CORPORATION, KERN SEGAL & MURRAY, PHILIP A. SEGAL, RANDALL R. PETRO, DOES 1-100, inclusive, | **Date:    July 12, 2021**<br>**Time:    9:30 a.m.**<br>**Dept:    302 (Law & Motion)** |
| 16  Defendants. | |
| 17 | Complaint Filed: December 31, 2020 |

20    On May 3, 2021, **Defendants Mercury** Insurance ("Mercury") and Mr. Randall R. Petro

21  (collectively "Mercury") filed a special motion to strike (anti-SLAPP) per Code of Civil

22  Procedure § 425.16 ("Motion") in response to Plaintiffs' First Amended Complaint. On July 9,

23  2021, the Honorable Ethan P. Schulman issued a Tentative Ruling granting the Motion in its

24  entirety. The hearing was set for July 12, 2021 at 9:30 a.m. in Department 302. On July 11,

25  2021, Plaintiffs filed this request for a Statement of Decision from the Court explaining the

26  factual and legal bases for each of the principal controverted issues listed below pursuant to

27  Code of Civil Procedure sections 632 and 634, and California Rules of Court, rule 3.1590.

28

1

PLAINTIFFS' REQUEST FOR STATEMENT OF DECISION

1

## REQUEST FOR STATEMENT OF DECISION

2   **A.    The Doctrine of Implied Findings**

3   "The doctrine of implied findings requires the appellate court to infer the trial court made

4   all factual findings necessary to support the judgment. [citation] The doctrine is a natural and

5   logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed

6   correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the

7   appellant bears the burden of providing an adequate record affirmatively proving error."

8   (*Fladeboe v. America Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)  "As a practical matter,

9   the only way around this presumption is to demonstrate [to the appellate court] that no

10  substantial evidence supports some necessary factual component of the judgment. ***That's one***

11  ***of the steepest appellate hills and appellant can have to climb.***" (Hon. John L. Segal and Robin

12  Meadow, Winter 2020, *Statements of Decision: Part Deux*, Association of Business Trial

13  Lawyers: ABTL Report Los Angeles, p. 1.)

14  **B.    A Properly Prepared Statement of Decision Preserves the Record and Facilitates
        Appellate Review By Expressly Revealing the Factual and Legal Bases for the
15      Court's Findings**

16  "[H]ow does an appellant obtain a record affirmatively proving the trial court erred by

17  failing to make factual findings on an issue?  The appellant must secure a statement of decision

18  under Code of Civil Procedure section 632 and, pursuant to Code of Civil Procedure section

19  634, bring any ambiguities and omissions in the statement of decision to the trial court's

20  attention." (*Fladeboe, supra,* 58.)  Section 632 provides that "[t]he court shall issue a statement

21  of decision explaining the factual and legal basis for its decision as to each of the principal

22  controverted issues at trial upon the request of any party appearing at the trial."  Section 634

23  provides that "[w]hen findings on material subsidiary issues of fact are requested or when the

24  omission of such findings is brought to the trial court's attention prior to entry of judgment, the

25  trial court is required to make such findings.  If it does not do so, it cannot be inferred on appeal

26  that the trial court found in favor of the prevailing party on the issues covered by the requested

27  findings." (*Kuffel v. Seaside Oil Co.* (1977) 69 Cal.App.3d 555, 565; *Code Civ. Proc.*, § 634.)

28

2

"The statement of decision provides the trial court's reasoning on disputed issues and is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law." (*Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718.) Moreover, a "statement of decision facilitates appellate review by revealing the bases for the trial court's decision." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 293; *Gruendl v. Oewel Partnership, Inc.* (1997) 55 Cal.App.4th 654, 661 ["One of the primary purposes of a statement of decision is to facilitate appellate review."].)

## C.    Mercury Insurance Files a Special Motion to Strike Pursuant to Code of Civil Procedure Section 425.16

On May 3, 2021, Defendants Mercury Insurance ("Mercury") and Mr. Randall R. Petro ("Petro") filed a special motion to strike (anti-SLAPP) pursuant to Code of Civil Procedure § 425.16 in response to Plaintiffs' First Amended Complaint. On May 19, 2021, the Court denied Plaintiffs' request for a hearing on a motion to permit discovery pursuant to Code of Civil Procedure section 425.16(g) "without prejudice" and advised Ison to raise the issue again in his opposition papers because it would be pointless to file a motion for discovery that would not be heard until after Mercury's motion to strike was decided. (See Exhibit B) On July 12, 2021, the Court issued its Tentative Decision granting Mercury's Motion in its entirety. A copy of the Tentative Ruling is attached hereto as Exhibit A.

## D.    A Statement of Decision Is Required in this Case Because it Involves Important Issues Relevant to How Civil Code § 47 and Mediation Confidentiality Encourage Attorney Misconduct

"The requirement of a written statement of decision generally does not apply to an order on a motion, even if the motion involves an evidentiary hearing and even if the order is appealable." (*Lien v. Lucky United Properties Investment, Inc.* (2008) 163 Cal.App.4th 620, 623-24.) However, "Courts have created exceptions to the general rule limiting statements of decision to trials." (*Id.* at 624.) "The new test relative to the necessity for findings of fact . . . involves a balancing of the following factors: (1) the importance of the issues at stake in the proceeding, including the significance of the rights affected and the magnitude of the potential

3

1  adverse effect on those rights; and (2) whether appellate review can be effectively accomplished

2  even in the absence of express findings." (*In re Marriage of Wood* (1983) 141 Cal.App.3d 671,

3  679-80) "The new rule relative to findings was predicated upon due process constitutional

4  grounds and . . . California Supreme Court decisions which emphasized that basic fairness, as

5  well as adequate appellate review, required findings at the trial level." (*In re Marriage of Wood,*

6  *supra,* at p. 679.)    And while a statement of decision is not required for every motion, it is

7  clearly the "better practice for trial courts to issue statements of decision or findings of fact

8  when ruling on motions that turn primarily on factual determinations . . . ." (*Gruendl, supra,* at

9  p. 661.) Hence, as noted by the Honorable John L. Segal, "a conscientious judge will rarely

10  refuse to issue a statement of decision when one is required and properly requested." (Hon.

11  John L. Segal and Robin Meadow, Winter 2019, *Statements of Decision: Your Chance to Tell*

12  *and Preserve the Story,* Association of Business Trial Lawyers: ABTL Report Los Angeles, p.

13  3.)    For the reasons discussed below, Plaintiffs respectfully requests that this Court issue a

14  Statement of Decision.

15       **1.**    **Attorney and Mediator Misconduct that Corrupts the Judicial Process and**

16           **Undermines Public Confidence in the Fairness and Integrity of the Courts**

          **Is an Issue of Widespread Public Importance that Affects a Large Number**

17           **of Citizens**

18       "Every person on his admission shall take an oath to support the Constitution of the

19  United States and the Constitution of the State of California, and faithfully to discharge the

20  duties of any attorney at law to the best of his [or her] knowledge and ability." (*Bus. & Prof.*

21  *Code,* § 6067.) Among the duties that attorneys are sworn to uphold is that they use "means

22  only as are consistent with truth, and never to seek to mislead the judge or any judicial officer

23  by an artifice or false statement of fact or law." (*Bus. & Prof. Code,* § 6068(d) "[A]ny violation

24  of the oath taken by [an attorney] or of his [or her] duties as such attorney, constitute causes for

25  disbarment or suspension." (*Bus. & Prof. Code,* § 6103)

26       The evidence in this case documents a course of conduct by Mercury and Kern Segal by

27  which the Kern Segal attorneys violate their attorney's oath and use unethical and unscrupulous

28

litigation tactics harms persons injured by Mercury's insured and undermines public confidence in the integrity and fairness of the judicial process. Diamond's conduct calls into question his neutrality and impartiality in every mediation he has done where Mercury or Kern Segal was involved thereby undermining public confidence in the fairness and integrity of mediation. Indeed, the appellate court decision that flows from this case could end up having far reaching implications for legal profession and discipline. It is imperative that the Court of Appeal know exactly what this Court found on the material controverted issues and why when reviewing this ruling. Hence, a Statement of Decision is warranted in this case.

2.    **To Facilitate Appellate Review, The Court Must Issue a Statement of Decision that Provides The Factual and Legal Bases for the Findings On Controverted Issues on Which the Court Was Silent in its Tentative Ruling**

"Precisely because [the anti-SLAPP] statute (1) permits early intervention in lawsuits alleging unmeritorious causes of action that implicate free speech concerns, and (2) limits opportunity to conduct discovery, the plaintiff's burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.)

Plaintiffs respectfully disagree with the Court's finding and believe that the Court erred in how it construed the evidence: the Court accepted as true all evidence favorable to Mercury, Kern Segal and Diamond rather than Plaintiffs as the law requires. The Court did not refer to any of Plaintiff's evidence and appears to have disregarded it without discussion or evidentiary rulings. The Court made no findings on a host of material controverted issues such that if the ruling is not augmented and clarified, it will impede and obstruct appellate review. (See e.g., *Gruendl v. Oewel Partnership, Inc.* (1997) 55 Cal.App.4th 654, 661[court held that a statement of decision was required following a motion to amend judgment because important interests were at stake and the absence of factual findings would make appellate review "problematic"].)

Plaintiffs hereby requests that Court issue a statement of decision explaining the factual

5

and legal bases for its decision as to each of the principal controverted issues raised by Mercury's Motion. The principal controverted issues that were not addressed by the Court's Tentative Ruling include the following:

1.   In granting the Motion, did the Court accept as true the evidence favorable to the plaintiff? (See *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) If not, why not?

2.   In finding that the Defendants were immunized from lawsuit per Civil Code section 47(b), did the Court accept as true the evidence favorable to Plaintiffs? If not, why not? If so, what is the Court's legal authority and reasoning that underlie that finding?

3.   Did the Court find that Segal, McGuirk, and Diamond did not violate Business & Professions Code § 6106 based on the evidence submitted by Plaintiffs? If not, why not? If so, what is the factual basis, specific items of evidence and reasoning that underlie that finding?

4.   Did the Court find that Defendants did not violate Business & Professions Code § 6106 after accepting as true the evidence favorable to the plaintiff? If not, why not? If so, what is the Court's legal authority, specific items of evidence and reasoning that underlie that finding?

5.   Did the Court find that Segal, McGuirk, and Diamond did not violate Business & Professions Code § 6128? If not, why not? If so, what is the factual basis, specific items of evidence and reasoning that underlie that finding?

6.   Did the Court find that Defendants did not violate Business & Professions Code § 6128? If not, why not? If so, what is the Court's legal authority, specific items of evidence reasoning that underlie that finding?

7.   Did the Court find that Segal, McGuirk, and Diamond did not violate Business & Professions Code § 6068(d)? If not, why not? If so, what is the factual basis, specific items of evidence and reasoning that underlie that finding?

PLAINTIFFS' REQUEST FOR STATEMENT OF DECISION

8.   Did the Court find that Defendants did not violate Business & Professions Code § 6068(d)?  If not, why not?  If so, what is the Court's legal authority and reasoning that underlie that finding?

9.   Did the Court find that Defendants did not seek to mislead the Court about Strong's and McGuirk's presence at the mediation?  If so, on what evidence did the Court rely and what was the reasoning that underlie its finding?

10.  Did the Court find inadmissible any of the communications, pleadings, written discovery, letters, email and other documents generated by the underlying action? If so, what were those items of evidence and what was the legal basis and reasoning that underlie the Court's finding with respect to each item of evidence?  Did the Court consider the California Supreme Court's guidance on this issue?  (See *Flatley v. Mauro* (2006) 35 Cal.4th 299; *Oren Royal Oaks Venture v. Greenberg, Bernard, Weiss & Karma Inc.* (1986) 42 Cal.3d 1157 ["when allegations of misconduct properly put an individual's intent at issue in a civil action, statements made during the course of a judicial proceeding may be used for evidentiary purposes in determining whether the individual acted with the requisite intent."].)

11.  Did the Court find inadmissible any of the items of evidence listed below?  If so, which items of evidence did the Court so find and what the legal bases for finding each one inadmissible?

   a.   Strong's "debit card line item statement" showing that the City of San Rafael charged her $.50 for parking on December 17, 2020.

   b.   McGuirk's credit card statement showing that the City of San Rafael charged her $1.00 for parking on December 16, 2020.

   c.   Kern Segal's refusal to voluntarily provide Ison with evidence proving that Strong and McGuirk were at Diamond's office for fours on December 16, 2020.  (CACI 204; *People v. Edelbacher* (1989) 47 Cal.3d

7

983, 1007 ["A defendant's willful suppression of evidence, or willful attempt to suppress evidence, is admissible to prove consciousness of guilt."]; CACI 202 (indirect or circumstantial evidence].)

d.  Kern Segal's refusal to voluntarily provide Ison with evidence that would have secured the dismissal of their client, Kenichi Kawashima.  (CACI 204; *People v. Edelbacher* (1989) 47 Cal.3d 983, 1007.)

e.  Kern Segal's failure to file a reply brief that addressed Ison's allegations of criminal misconduct and violations of provisions of the State Bar Act that carry criminal penalties and potential disbarment. (*People v. Preston* (1973) 9 Cal.3d 308, 313-314 [If "a person is accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply . . . and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt."]; *Evid. Code*, § 1221.)

f.  Kern Segal's failure to reply to Ison's accusation that McGuirk fabricated text messages and tried to pass them off as authentic. (*People v. Preston* (1973) 9 Cal.3d 308, 313-314; *Evid. Code*, § 1221.)

g.  Plaintiffs arriving at the mediation 25 minutes late but being the last to sign the Mediation Confidentiality Agreement.  (CACI 202)

h.  Diamond taking 27 hours to email to Plaintiffs a Mediation Confidentiality Agreement signed by Strong and McGuirk. (CACI 202)

i.  Diamond lied about the reason for the 27-hour delay in sending the signed Mediation Confidentiality Agreement to Plaintiffs.

j.  Strong's failure to submit a declaration in support of Defendants' Motion.

k.  Defendants' withdrawal of the motion for sanctions pursuant to Code of

8

Civil Procedure § 128.5 in the underlying case.

l.  Defendants' failure to explain why Strong's "debit card line item statement" that Defendants offer as proof Strong was at the mediation (see Defendants Point & Authorities, p. 14:___) is dated December 17, 2020. (*Evid. Code*, § 413 ["In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider . . . the party's failure to explain or to deny by his testimony such evidence or facts in the case against him"].)

12.  Did the Court find that McGuirk's credit card statement helps prove that she was at Diamond's office for four hours on December 16, 2020? If not, why not? If so, what is the reasoning that underlie this finding?

13.  Did the Court find that Tara Strong's "debit card line item statement" dated December 17, 2020 helps prove Mercury's contention that Strong was at Diamond's office for four hours on December 16, 2020? If not, why not? If so, what is the reasoning that underlie this finding?

14.  Did the Court find that there is a reasonable explanation for why Strong's "debit card line item statement" that Defendants claim is proof of Strong being at the mediation was dated December 17, 2020 and in the amount of $.50 rather than December 16, 2020 and in the amount of $4.00? If so, what was the factual basis and reasoning that underlie that finding?

15.  What does the Court contend are the elements of the litigation privilege that must be satisfied for the litigation privilege to immunize Defendants from liability?

16.  Did the Court find that Defendants' alleged misconduct as described in the FAC satisfied the "relevancy requirement" to the litigation privilege codified in Civil Code § 47(b)? If not, why not? If so, on what facts, specific items of evidence and legal authorities did the Court rely on in making that finding?

17.  Did the Court find that Diamond pretending that Strong and McGuirk were

9

present at the mediation helped "achieve the objects of litigation" in the underlying case? If not, why not? If so, on what facts, specific items of evidence and legal authorities did the Court rely on in making that finding?

18. Did the Court find that Diamond going back and forth between Ison and an empty room at the mediation was a "communicative" act immunized from suit by the litigation privilege? If not, why not? If so, on what facts, specific items of evidence and legal authorities did the Court rely on in making that finding?

19. Did the Court make a finding as to what was the "gravamen" of each cause of action alleged by Plaintiff? (*Kimmel v. Goland* (1990) 51 Cal.3d 202) If not, why not? If so, what is the Court's legal authority and reasoning that underlie each finding?

20. Did the Court find that Strong and McGuirk not attending mediation was a "communicative" act protected by the litigation privilege? If so, what is the factual bases, specific items of evidence and legal bases for that conclusion?

21. Did the Court find that Strong and McGuirk not attending mediation functioned as a "necessary or useful step in the litigation process" in the underlying case and "serve[d] its purposes"? (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1146.) If so, what is the factual bases, specific items of evidence and legal bases for that conclusion?

22. Did the Court find that Phillip A. Segal stating to Ison "You will likely be disbarred soon for unethical conduct" was a statement that functioned as "a necessary or useful step and in the litigation process" in the underlying case? (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1146.) If so, what is the Court's legal authority, specific items of evidence and reasoning that underlie each finding?

23. Did the Court find that Segal had evidence supporting his allegation that Ison acted in an unethical manner and that he would likely be disbarred? If not, why

10

1     not? If so, what is the factual and legal basis for that finding?

2    24.   Did the Court find that all of Plaintiff's allegations against the defendants are

3        based on "communicative acts" immunized from liability per Civil Code section

4        47(b)? If not, why not? If so, what is the factual and legal basis for that finding?

5    25.   Did the Court find that Plaintiffs' emotional distress damages cannot reasonably

6        be inferred from the conduct of the Defendants as described in the FAC and

7        Plaintiffs' opposition papers? If so, what is the factual bases, specific items of

8        evidence and legal bases for that conclusion? Did the Court consider *Fletcher v.*

9        *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 in making its finding?

10    26.   What parts of the Ison declaration did the Court find "speculative", and what are

11        the factual and evidentiary bases for that finding?

12    27.   Did the Court find that the claims contained in the Ison declaration that the Court

13        found to be "speculative" cannot be proven under any circumstances even with

14        discovery? If so, which claims did the Court find could never be proven even with

15        discovery and what is the factual and legal bases for that finding?

16    28.   Did the Court find that Diamond was "neutral" as that term is used in Evidence

17        Code § 1115(b)? If not, why not? If so, what is the factual basis, specific items

18        of evidence and reasoning that underlie that finding?

19    29.   Did the Court find that what occurred at Diamond's office on December 16,

20        2020, was a "mediation" within the meaning of Evidence Code § 1115(a)? If

21        not, why not? If so, what is the factual basis, specific items of evidence and

22        reasoning that underlie that finding?

23    30.   Did the Court find that any of the items of evidence submitted by any party was

24        protected from disclosure by mediation confidentiality? (Evid. Code, §§ 1115-

25        1129) If not, why not? If so, what is the factual basis, specific items of evidence

26        and reasoning that underlies that finding?

27

28

**PLAINTIFFS' REQUEST FOR STATEMENT OF DECISION**

1    Dated: July 11, 2021                          THE ISON LAW FIRM, PC

2

3                                             James J. Ison, Esq.

                                             Attorney for Plaintiffs

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' REQUEST FOR STATEMENT OF DECISION**

EXHIBIT R

1

2

3

4

5

6

7

8

9

FILED
San Francisco County Superior Court

JUL 1 2 2021

CLERK OF THE COURT
BY: _____
Deputy Clerk

10        SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                COUNTY OF SAN FRANCISCO

12                 UNLIMITED JURISDICTION

13   JAMES J. ISON, THE ISON LAW FIRM,        NO.: CGC-20-589080
     PC,
14                                            **ORDER GRANTING DEFENDANTS'**
                    Plaintiffs,               **SPECIAL ANTI-SLAPP MOTION TO**
15                                            **STRIKE PLAINTIFFS' FIRST**
     vs.                                      **AMENDED COMPLAINT**
16
     MERCURY INSURANCE; MERCURY
17   GENERAL CORPORATION; KERN
     SEGAL & MURRAY; PHILIP A. SEGAL,         Date:  July 12, 2021
18   RANDALL R. PETRO; and DOES 1             Time:  9:30 a.m.
     through 100, inclusive,                  Dept.  302, Law & Motion
19
                    Defendants.               Complaint filed: December 31, 2020
20

21   _____/

22       Defendants MERCURY GENERAL CORPORATION (also erroneously sued as

23   MERCURY INSURANCE), RANDALL R. PETRO's Special Anti-SLAPP Motion to Strike

24   Plaintiffs' First Amended Complaint came on regularly for hearing by the Court on July

25   12, 2021. On good cause appearing, the Court rules as follows:

26       Defendants Mercury General Corporation and Randall Petro's anti-SLAPP motion

27   to strike is granted in its entirety. Plaintiffs James J. Ison and the Ison Law Firm, PC

28   ("Plaintiff")'s request for judicial notice of a brief filed by the California Department of

Insurance in an unrelated case involving defendant Mercury and the late-filed supplemental request for judicial notice of the complaint lodged by plaintiff against defense counsel with the State Bar of California are denied as unnecessary and irrelevant to the resolution of the motion. (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].) Plaintiff's evidentiary objections on due process grounds are overruled. Plaintiff failed to show good cause for discovery. (Code Civ. Proc. § 425.16(g).) Finally, the Court is not required to issue a formal statement of decision on the motion, as Plaintiff requests. (See *Lien v. Lucky Properties Investment, Inc.* (2008) 163 Cal.App.4th 620, 632-624 ["The requirement of a written statement of decision generally does not apply to an order on a motion, even if the motion involves an evidentiary hearing and even if the order is appealable"] [criticizing contrary statement in *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562 as "dicta that has not been adopted by any subsequent case"].) Nevertheless, this order explains the factual and legal bases for the Court's decision as to each of the principal controverted issues presented by the motion.

Defendants meet prong one of the anti-SLAPP statute because the First Amended Complaint ("FAC") arises from protected activity under Code of Civil Procedure section 425.16(e)(2) ["any written or oral statement or writing made in connection with an issue under consideration or review by a…judicial body"].) The FAC is based on allegations concerning defendants' communications and other conduct in protected litigation activity in the underlying San Mateo County personal injury motor vehicle action, specifically in connection with a mediation in that action, defendants' request that plaintiffs dismiss a named defendant in that action, communications in connection with a discovery dispute, and defendants' filing of a sanctions motion. (See, e.g., FAC, ¶ 91 ["Defendants used the Mediation procedure and their motion for sanctions filed in the underlying action to fraudulently obtain the dismissal of Kawashima and harass Plaintiff into dismissing him."]; *id.* ¶ 101 ["Defendants made express representations regarding Strong's and

1    McGuirk's physical presence at Mediation that were false and misleading."].

2        There can be no question that settlement negotiations and agreements are made "in
3    connection with" litigation for purposes of the anti-SLAPP statute. (See, e.g., *Navellier v.*
4    *Sletten* (2002) 29 Cal.4th 82, 90 [applying anti-SLAPP statute to claim based on false
5    statements during negotiation]; *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th
6    118, 123 [anti-SLAPP statute protects fraudulent promises made during the settlement
7    process]; *Optional Capital Inc. v. Akin Gump Strauss. Hauer & Feld LLP* (2017) 18
8    Cal.App.5th 95, 113-114 [communications made during settlement negotiations implicate
9    anti-SLAPP statute].) As these cases make clear, the statute applies "even against
10   allegations of fraudulent promises made during the settlement process" (*Suarez*, 3
11   Cal.App.5th at 123) and settlement negotiations allegedly conducted in bad faith or for an
12   unlawful purpose. (See *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 964-967 [plaintiff
13   claimed her insurer's attorney secretly negotiated settlement with third party that deprived
14   plaintiff of insurance coverage].)

15       Plaintiffs' argument that defendants do not meet prong one because their conduct
16   was "conclusively" illegal fails.    (See *Flatley v. Mauro* (2006) 39 Cal.4th 299,
17   316.) *Flatley*'s holding that the anti-SLAPP statute cannot be invoked by a defendant
18   whose assertedly protected activity was illegal as a matter of law is limited to cases where
19   "*either the defendant concedes, or the evidence conclusively establishes*, that the assertedly
20   protected speech or petition activity was illegal as a matter of law." (*Id.* at 320 (emphasis
21   added); see also *Belen v. Ryan Seacrest Productions, LLC*, 2021 WL 2659755 (June 29,
22   2021) at *7 ["Illegal conduct as a matter of law under *Flatley* must be based on a
23   defendant's concession or on uncontroverted and conclusive evidence—neither of which is
24   present at this stage of the proceedings"].) If plaintiff claims that defendant's speech or
25   petitioning activity is illegal and thus not protected, "plaintiff bears the burden of
26   conclusively proving the illegal conduct." (*Cross v. Cooper* (2011) 197 Cal.App.4th 357,
27   385.)

28       "Not only did [defendants] not concede criminal conduct, but we do not find this to

1   be one of those rare cases in which there is uncontroverted and uncontested evidence that

2   establishes the crime as a matter of law." (*Id.* at 386.)  In *Flatley*, the court found

3   conclusive illegality because the communications threatened to accuse Flatley of a crime

4   unless a $1 million payment was made.  Here, plaintiff fails to conclusively establish that

5   defendants engaged in extortion in violation of Penal Code section 518.  None of the

6   defendants obtained any consideration through the wrongful use of force or fear.  Rather,

7   Mr. Segal merely stated (in the context of a discovery dispute) that plaintiff Ison was

8   making misrepresentations and "[y]ou will likely be disbarred soon for unethical conduct. I

9   have never been wrong." (FAC ¶ 77 & Ex. A; Segal Decl. ¶ 8.)  Mr. Segal never

10  threatened to report plaintiff nor did he seek anything in return.

11        *Malin v. Singer* (2013) 217 Cal.App.4th 1283 is controlling.  There, the court held

12  that a demand letter that accused plaintiff of sexual misconduct but "made no overt threat

13  to report [plaintiff] to prosecuting agencies" did not fall under "the narrow exception

14  articulated in *Flatley* for a letter so extreme in its demands that it constituted criminal

15  extortion as a matter of law." (*Id.* at 1299; see also *Cross*, 197 Cal.App.4th at 386-387

16  [*Flatley* not applicable where communications were neither admitted extortion nor were

17  extortion as a matter of law, because information for which disclosure was threatened

18  (location of registered sex offender) was public information, not a secret]; *Seltzer*, 182

19  Cal.App.4th at 965 [*Flatley* exception not applicable to assertedly unlawful settlement

20  negotiations where plaintiff failed to demonstrate the absence of relevant factual

21  disputes].)  Plaintiff also fails to conclusively establish illegal deceit pursuant to Business

22  & Professions Code section 6128.  Defendants proffer evidence that contrary to plaintiff's

23  unsupported "sham mediation" claim, counsel and Ms. Strong (unlike plaintiff's client,

24  Ms. Talens) in fact were physically present at the mediation. (Diamond Decl., ¶¶ 3-10;

25  McGuirk Decl., ¶¶ 8, 15; see *Seltzer*, 182 Cal.App.4th at 965 [rejecting argument that

26  defendant's negotiation of settlement violated section 6128 where defendant's intent was a

27  disputed factual issue].)

28        Since defendants meet prong one, the plaintiff must establish via admissible

ORDER GRANTING DEFS.' ANTI-SLAPP MOT. TO STRIKE          Case No. CGC-20589080

evidence a probability of prevailing on the claims (prong two). (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 81; *Computer Xpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010.)  The speculative Ison Decl. does not constitute admissible evidence that establishes a *prima facie* case as to any of plaintiff's claims.  "[A] plaintiff opposing a section 425.16 motion must support its claims with admissible evidence." (*Tuscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1237-1238 [developer's declaration was inadmissible "to the extent it is supported only by information and belief or his mere understanding of events," stated "argumentative, speculative and impermissible opinions," or lacked foundation and personal knowledge; that trial court considered and ruled on the admissibility of opposing party's evidence did not establish that it weighed the parties' evidence]; see also *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497-1498 [declaration on information and belief is inadequate to show a probability that the plaintiff will prevail on the claim, since at trial the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter].

"A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim."  (*Malin*, 217 Cal.App.4th at 1300 (quoting *Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 888 [holding that plaintiff's extortion claim was barred by litigation privilege].)  Here, plaintiff cannot establish that his claims have even minimal merit because they are barred by the litigation privilege.

To prevail on a claim for abuse of process, plaintiff must establish: "'First, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding.'" (*Cantu v. Resolution Trust Coro.* (1992) 4 Cal.App 4th 857, 884-885 [citing *Oren Roval Oaks Venture v. Greenberu. Bernhard. Weiss & Karma. Inc.* (1986) 42 Cal.3d 1157, 1168].)  Here, the litigation privilege bars the abuse of process claim, which is based on allegedly fraudulent statements made during the mediation process and defendants' filing of a motion for sanctions.  The gravamen of plaintiffs'

claims is that defendants falsely represented that the adjuster and counsel would physically appear at the impartial mediation. "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) "Any doubt about whether the privilege applies is resolved in favor of applying it." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.) The privilege also "extends to noncommunicative acts that are necessarily related to the communicative conduct... unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1065.)

The mediation was part of the underlying *Talens* tort action. "Statements made in the course of litigation are subject to the privilege set forth in Civil Code section 47, subdivision (2) (currently Civ. Code, § 47, subd. (b)) and cannot provide the basis for an abuse of process action." (*Cantu*, 4 Cal.App.4th at 886; see FAC, ¶ 29 [describing "agreement" parties entered into where counsel and adjuster would be physically present at the mediation], ¶ 43 [describing mediator Diamond's representations], ¶¶ 52, 64 [describing breached mediation agreement], ¶¶ 65 & 67 [describing defendant's improper motion for sanctions and fraudulent misrepresentations], ¶ 91 [describing fraudulent use of mediation procedure and motion for sanctions], ¶ 101 [misrepresentations regarding mediation]; Ison Decl. [describing communications regarding the mediation].) In any event, plaintiff's evidence is speculative and does not support a *prima facie* claim. (See Ison Decl. ¶ 38 [detailing plaintiff's "susp[icion]" that he was "the only party who actually attended the mediation"].)

The same is true for plaintiff's other claims. The essential elements for an intentional infliction of emotional distress claim are well established: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or extreme

emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.) As noted, defendants' statements regarding the mediation were privileged even if they were false. (*Cantu*, 4 Cal.App.4th at 888 ["[H]e can state no cause of action for intentional infliction of emotional distress, even if the defendants submitted perjurious and malicious declarations or pleadings."].) Plaintiff also fails to present any evidence showing "extreme and outrageous" conduct or severe emotional distress.

In any event, the adduced false statements are privileged. A claim for fraud or deceit must show a false representation as to a material fact, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage. (See *Lazar v. Superior Court* (1996) 12 Cal. 4th 631, 638.) It is unclear when or if plaintiff ever dismissed Kawashima, which was the alleged consideration/detrimental reliance. Indeed, plaintiff contested the legitimacy of the mediation and refused to dismiss him without further proof. (See Ison Decl., ¶¶ 38-46.)

Lastly, the UCL claim (which plaintiff does not address) fails based on the litigation privilege and plaintiff does not demonstrate standing to pursue the claim. There is no evidence regarding any money or property plaintiff allegedly lost as a result of the alleged unfair business practice; the "injury in fact" is unclear. (See *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320-321.)

Defendants' special motion to strike is granted in its entirety. Defendants may file a motion for an award of fees and costs pursuant to Code of Civil Procedure section 425.16(c)(1).

DATED: July 12, 2021.

JUDGE OF THE SUPERIOR COURT
**ETHAN P. SCHULMAN**

CGC-20-589080        **JAMES J. ISON ET AL VS. MERCURY INSURANCE ET AL**

I, the undersigned, certify that I am an employee of the Superior Court of California, County Of San Francisco and not a party to the above-entitled cause and that on July 12, 2021 I served the foregoing **order granting Defendants' special anti-slapp motion to strike Plaintiffs' first amended complaint** on each counsel of record or party appearing in propria persona by causing a copy thereof to be enclosed in a postage paid sealed envelope and deposited in the United States Postal Service mail box located at 400 McAllister Street, San Francisco CA 94102-4514 pursuant to standard court practice.

Date: July 12, 2021            By: SHIRLEY LE

JAMES J. ISON
THE ISON LAW FIRM, PC
333 UNIVERSITY AVENUE, STE. 200
SACRAMENTO, CA 95825

PHILIP A. SEGAL / TODD DRAKEFORD
KERN SEGAL & MURRAY
15 SOUTHGATE AVENUE, SUITE 200
DALY CITY, CA 94015

EXHIBIT S



CITY OF
*San Rafael*

## WELCOME TO THE
## A STREET GARAGE

## PARKING RATES

**Each 30 Minutes** _____ **.50**
OR FRACTION THEREOF

**Maximum** _____ **$10.00**
ALL DAY

LOST TICKET MUST PAY VARIABLE TICKET RATE

**MONDAY – SATURDAY**
**6:00 AM – 11:00 PM**

**SUNDAY**

**All Day** _____ **FREE**

NO PARKING 3:00 AM – 5:00 AM

**MONTHLY & FREQUENT
PARKING PERMITS AVAILABLE**

_____

**FOR INFORMATION:
PLEASE CALL 415-458-5333**