James J. Ison, Esq. (SBN 209116)
**THE ISON LAW FIRM, PC**
333 University Avenue, Suite 200
Sacramento, California 95825
Telephone: (916) 565-7677
Facsimile: (916) 929-0448
james@jisonlaw.com

Attorneys for Plaintiffs James J. Ison and
The Ison Law Firm, PC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES J. ISON AND THE ISON LAW FIRM, PC<br><br>Plaintiffs,<br><br>v.<br><br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO,<br>ETHAN P. SCHULMAN,<br>THE JUDICIAL COUNCIL OF CALIFORNIA,<br>TANI G. CANTIL-SAKAUYE,<br>MERCURY INSURANCE COMPANY, MERCURY CASUALTY COMPANY, CALIFORNIA AUTOMOBILE   INSURANCE COMPANY,<br>RANDALL R. PETRO,<br>TARA L. STRONG,<br>KERN SEGAL & MURRAY,<br>PHILIP A. SEGAL,<br>BRYANA S. MCGUIRK,<br>TODD P. DRAKEFORD,<br>MICHAEL S. THOMAS,<br>GRACE M. HARRIET,<br>STUART D. DIAMOND,<br>STUART DIAMOND LAW & MEDIATION OFFICE,<br>STACEY DIAMOND-GARCIA AND DOES 1 TO 25<br><br>        Defendants. | Case No. 2:21-cv-01546-MCE-KJN<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**Date:**    December 2, 2021<br>**Time:**    2:00 p.m.<br>**Courtroom:** 7 |

1

## I. INTRODUCTION

The Honorable Ethan P. Schulman granted an anti-SLAPP motion filed by a notoriously corrupt and unscrupulous insurance company whose contempt for the law is well documented by the Department of Insurance such that the Insurance Commissioner was compelled to impose "civil penalties against Mercury in the sum of $27,593,550 for almost 184,000 unlawful acts." *Mercury Ins. Co. v. Lara*, 35 Cal.App.5th 82, 87 (2019). He based his decision on the declaration of Mercury employee Tara L. Strong ("Strong") even though she did not provide such a declaration. Knowingly granting a dispositive motion and awarding attorneys' fees and costs to Mercury based on nonexistent evidence is a serious breach of judicial ethics and violation of law even if Judge Schulman is himself immune from suit because of his position as a judge.

Moreover, Judge Schulman refused to ***hear or even read*** Plaintiffs' motion requesting leave to conduct discovery by which they could have obtained evidence proving their claims against Mercury. In so doing he used his office to shield Mercury from liability and awarded it over $80,000 in attorneys' fees and costs ***based on a motion unsupported by any Mercury employee or any documentary evidence that could have dispositively disproved Plaintiffs' claims, which, if it existed, would have eliminated any triable issues of fact. To this day, Mercury has not in this Court or in the underlying action provided a declaration from Strong attesting to her physical attendance at the mediation or authenticating the alleged debit card statement purported by her attorneys and only her attorneys to belong to her.*** Why wouldn't Mercury have her sign a declaration attesting to her presence at the mediation and authenticating the debit card charge if she was present to give it every chance prevail on a dispositive motion? The only reasonable inference that can be drawn from these omissions is that it knew that Judge Schulman would grant its motion before filing it even if it did not produce the evidence that Judge Schulman based his ruling on.

Rather than let Plaintiffs conduct discovery that would have answered the above

2

referenced questions, Judge Schulman prevented the truth from coming out thereby exposing himself to allegations of corruption and misfeasance that could have been dispelled at the outset of the case. Instead, he used his office to attack and injure a litigant in a manner that benefitted Mercury Insurance.

Where a conspiracy is alleged, "[t]o be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.' [citation] This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants. *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir.1999). A showing that defendants committed acts that 'are unlikely to have been undertaken without an agreement' may support the inference of conspiracy." *Gunn v. Tilton*, No. 1:08-cv-01038-LJO-SAB (PC), at *7 (E.D. Cal. June 10, 2013) In the context of private actors' liability pursuant to 42 U.S.C. section 1983 based on their collusion with a state actor to deprive others of their federal rights, "[e]vidence that [a state actor] failed to exercise independent judgment will support an inference of conspiracy with a private party." *United Steelworkers of Am. v. Phelps Dodge,* 865 F.2d 1539, 1541 (9th Cir. 1989).

Judges are duty bound to act in a fair and impartial manner. Judge Schulman's failure to do so in this case is precisely the type of failure to "exercise independent judgment" from which a conspiracy with private actors such as Mercury and Kern Segal can be inferred and from which liability under Civil Rights Act can attach to private actors. Moreover, these were not the only ways in which Judge Schulman failed to act in an impartial and independent manner that give rise to allegations of corruption. Hence, as detailed in Plaintiffs' complaint and discussed below, Plaintiffs have pled facts that demonstrate cognizable causes of action that were not and could not be adjudicated in state court because they arise from facts whose genesis post-dates the filing of Plaintiffs' complaint in that action. Therefore, Mercury's motion must be denied.

Ultimately, through this motion, Mercury seeks to thwart Plaintiffs attempt to

conduct discovery by which the truth of one overriding question can answered: Did Mercury (i.e., Strong) physically attend the mediation or has it and its attorneys been committing fraud all along knowing that Judge Schulman would support their scheme by granting their motion. **Strong's cell phone records can prove with certainty whether she was at the mediation in question or not**. As detailed in Plaintiffs' complaint, Judge Schulman protected Mercury from discovery such that the truth could be suppressed. Because Plaintiffs have pled facts sufficient to sustain its claims, Mercury should not be allowed to again suppress the truth through pre-trial motions that deny Plaintiffs their right to conduct discovery that will prove or disprove their claims.

## II. STANDARD OF REVIEW

"A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016) "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "A complaint need not state 'detailed factual allegations,' but must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, 226 F. Supp. 3d 1116, 1119 (D. Nev. 2017)

### III.  LEGAL ARGUMENT

**A.  From Judge Schulman's Failure to "Exercise Independent Judgement" a Conspiracy with Mercury and Kern Segal Can be Inferred Giving Rise to a 42 U.S.C. § 1983 Claim Against the Private Actors**

"Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights." *United Steelworkers, supra,* at p. 1540.  "[P]rivate actors . . . who corruptly conspire with a judge in conjunction with the judge's performance of an official judicial act are acting under color of state law for the purpose of § 1983, even if the judge himself is immune from civil liability." *Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996).  Hence, a private actor can be held liable under section 1983 if the defendant "colluded" with a state court judge to "to deny him his due process rights."  *Wals v. Scattergood*, No. CV-06-474-PHX-FJM (D. Ariz. 2006). "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law.  A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced." *Kimes, supra*, at p. 1127.

"To prove a conspiracy between the state and private parties under section 1983, the [plaintiff] must show 'an agreement or `meeting of the minds' to violate constitutional rights.' [citation]  To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.  [citation] ***Evidence that [the state actor] failed to <u>exercise independent judgment</u> will support an inference of conspiracy with a private party.*** *United Steelworkers, supra*, at pp. 1540-41 [emphasis added].

As detailed in Plaintiffs' complaint, Judge Schulman, who is an exceptionally experienced and knowledgeable judge, exhibited a bias in favor of Mercury and Kern Segal to such a high degree he demonstrably failed to exercise his well-honed and independent legal judgment evident in his other legal writings and even misrepresented

facts regarding what evidence was "before" him. These failures to exercise independent judgement included, among others, the following:

- He denied Plaintiffs' request to depose Strong without reading Plaintiffs' motion seeking leave to conduct limited discovery or even letting it be heard; hence, in his first interaction with Plaintiffs he showed that he prejudged the case and denied Plaintiffs their fundamental right to examine witnesses whose testimony would be used against them, as well as Strong whose testimony remains hidden to this day. (**Plaintiffs note that Strong's declaration was not produced in support of their motion**)

- Judge Schulman granted Mercury's motion based on Strong's declaration even though the declaration was not in evidence and to this day she has remained silent despite being the most important witness in this case.

- Plaintiffs stressed before Judge Schulman granted Mercury's motion that Strong's failure to provide a declaration was evidence of her guilt. After Judge Schulman stated at the hearing that he had Strong's declaration "before me" indicating that he had it in his hands, Plaintiffs again highlighted in their motion for reconsideration that Mercury's failure to provide Strong's declaration was evidence of her guilt that should have been taken into account. Nonetheless, Judge Schulman reiterated in writing that his ruling was based on Strong's nonexistent declaration as if to tell Plaintiffs that he could base his ruling on nonexistent evidence if he so chose thereby giving an obvious and outward appearance of bias in violation of the Code of Judicial Ethics.

- Judge Schulman granted Mercury's motion based solely on the word of two defendants in the face of countervailing evidence thereby violating a fundamental principle of dispositive motion.

- Judge Schulman disregarded Plaintiffs' evidence in its entirety even though he knew that as a matter of law he was obligated to "accept as true" Plaintiffs' evidence as required with every dispositive motion – a principle of law that Judge Schulman surely knew but chose to disregard and omit from his ruling.

- Judge Schulman determined that Plaintiffs' complaint was based on protected speech by making vague reference to "settlement negotiations" that were not referenced in Plaintiffs' complaint and did not form any part of their claim; hence, as with Strong's declaration, he based his ruling on evidence that did not exist.

- Judge Schulman failed to assess the basis or "gravamen" of Plaintiffs' claims before finding that it was based on protected activity and referred to it in the gravamen of their claims second prong of the analysis where it was wholly irrelevant as it trying to get into his ruling without actually assessing what Plaintiffs' claims were based on.

- Judge Schulman called the hearing a "waste of time" and refused to answer any of the questions posed by Plaintiffs' Request for Statement of Decision.

- At the hearing on Mercury's motion, Judge Schulman exclaimed, "I'm not here to explain anything!" when Plaintiffs tried to engage him in discussion about evidence that he ignored thereby exhibiting a refusal to discuss his ruling.

- Judge Schulman disregarded legal arguments raised by Plaintiff that he himself had successfully asserted while in private practice.

Indeed, as these and other facts detailed in Plaintiffs' compliant demonstrate, in his desire to rule in Mercury's favor irrespective the law or the facts, Judge Schulman abdicated his responsibility to act as a fair and impartial judge and failed to exercise his independent professional judgment honed by his four decades as a lawyer, judge and appellate court justice.  What is perhaps most telling of Judge Schulman's actions from which a conspiracy may be inferred was his summarily denying Plaintiffs an opportunity to depose Strong and then basing his ruling on her nonexistent declaration because he recognized that her attesting to her presence at the mediation would ordinarily be provided by any attorney who wished to prevail on a dispositive motion if the outcome of the motion was uncertain, and her failure to do so should have caused him to deny Mercury's motion.

Moreover, Judge Schulman's reliance on Strong's declaration begs the question: Why didn't Mercury provide Strong's declaration in support of its anti-SLAPP motion? It would probably take no more than an hour to draft.  If she was at the mediation, she and Mercury would have records at their fingertips that would prove that she was there.  Most importantly, Mercury's failure to submit her declaration, as Plaintiffs' repeatedly pointed out to Judge Schulman, constitutes an adoptive admission of guilt that with a fair and impartial judge would be more than sufficient to defeat Mercury's motion: "If a person is

accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply . . . and he fails to speak . . . both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt." (*People v. Preston* (1973) 9 Cal.3d 308, 313-14.)

Instead, Mercury chose to file the motion supported only by the word of McGuirk and Diamond knowing that their declarations were contradicted by countervailing evidence and without submitting a single document corroborating Strong's presence at the mediation. To this day she has remained silent. **Indeed, from Judge Schulman's attempt to introduce Strong's declaration into the record by judicial fiat so that Mercury did have actually have to produce it reveals that Mercury and Judge Schulman shared the common objective of defeating Plaintiffs' claims irrespective the constitutional, legal, or ethical ramifications of their actions.** Hence, Plaintiffs have alleged facts that that amply support a claim for relief against Mercury and Kern Segal pursuant to section 1983.

**B.  Res Judicata and Collateral Estoppel Do Not Apply Because Plaintiffs' Current Claims Have and Could Not Have Been Adjudicated in the State Court Action**

"Res judicata , or claim preclusion, prohibits lawsuits on any claims that were raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir.2002). "Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir.2003).

Plaintiffs' claims in this action are premised on Mercury's and Kern Segal's violation of their constitutional rights based on their colluding with a state court judge to effectuate a result designed to damage Plaintiffs and enrich themselves. All of the facts on which Plaintiffs' current claims are based arose after they filed their amended complaint in the state court action on March 17, 2021. Hence, Plaintiffs claims could not have been

litigated in the underlying case and based on a different set of facts such that their current claims are not barred by principles of claim preclusion.

C. **The *Rooker-Feldman* Doctrine Does not Apply Because Plaintiffs Do Not a Reversal of the State Court Orders**

"[T]he Rooker-Feldman doctrine applies only to cases 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284. It does not apply when the underlying state court proceedings have not concluded." *Salah v. Contra Costa Children & Family Servs., No. 18-cv-00470-YGR*, at *1 (N.D. Cal. July 2, 2018)  The *Rooker-Feldmen* limitation on subject matter jurisdiction applies only to federal actions commenced after state court proceedings ended. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 291 (2005).  Plaintiffs' claims in the underlying matter have been appealed such that the state court action has not ended.  Hence, Rooker-Feldman does not apply.

Moreover, Rooker-Feldman "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court ***and seeks as her remedy relief from the state court judgment.***" *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (italics in original, bolding added). Put another way, *Rooker-Feldman* does not apply to "any claim seeking to reverse the state court orders cannot proceed in this federal court." *Williams v. Fresno Cnty. Dep't of Child Support Servs.*, No. 1:21-cv-00434-NONE-EPG, at *12 (E.D. Cal. Apr. 21, 2021)

**Plaintiffs are not seeking a reversal of the state court rulings** – they allege new and independent section 1983 claims similar to the claims alleged by the plaintiffs in *Kimes*. Indeed, it is well established that "private actors . . . who corruptly conspire with a judge in conjunction with the judge's performance of an official judicial act are acting under color of state law for the purpose of § 1983, even if the judge himself is immune from civil liability." *Kimes, supra,* 84 F.3d at p. 1126.) Mercury seeks to use Rooker-Feldman to immunize itself from liability for conspiring with a state court judge and reverse *Kimes* and

its progeny. Therefore, Rooker-Feldman does not bar Plaintiffs' claims against the *Mercury* defendants.

**D.      Plaintiffs Have Pled Detailed and Particular Facts Sufficient to Sustain Their Racketeering and Corrupt Organizations Act Claim ("RICO")**

The Racketeering and Corruption Organizations Act ("RICO") codified in Title 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). "[W]ith its very generous definition of 'racketeering activity,' [RICO] acknowledges the breakdown of the traditional conception of organized crime, and responds to a new situation in which persons engaged in long-term criminal activity often operate wholly within legitimate enterprises. Congress drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways" such that persons engaging in racketeering activities may be subject to RICO's enhanced penalties without having an "organized crime nexus." (*H. J. Inc. v. Northwestern Bell Telephone Co*. (1989) 492 U.S. 229, 248-49) RICO's reach is "expansive" and such those who are defined as "racketeers" by the statute are persons committing a "category of common law or 'garden variety' fraud and which would, in the past, have been the subject of commercial litigation under state law. Among these broadly delineated federal offenses are mail fraud and wire fraud." *Tabas v. Tabas,* 47 F.3d 1280, 1290 (3d Cir. 1995).

"To allege a violation of the mail fraud statute, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. [citations omitted] Similarly, a wire fraud violations consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in

furtherance of the scheme; and (3) specific intent to deceive or defraud." (*Schreiber Distributing v. Serv-Well Furniture* 806 F.2d 1393, 1399-400 (9th Cir. 1986).

The "elements of a RICO claim are simple enough: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" (*Grimmett v. Brown* 75 F.3d 506, 510 (9th Cir.1996).

Plaintiffs' complaint provides detailed allegations of the alleged fraud ("conduct") in which the Mercury and Kern Segal Defendants ("enterprise") used emails, letters and court filings to obtain an award of attorneys' fees ("patterns of racketeering activity" and "predicate acts") based on their fraud ("causing injury") such that Plaintiffs have established each element of a RICO claim based on the detailed allegations in their complaint. Hence, Plaintiffs have pled facts sufficient to support a cognizable RICO claim and therefore defeat a motion to dismiss as their allegations must be accepted as true and given all reasonable inferences that can be drawn therefrom.

## IV. CONCLUSION

Plaintiffs are not required to prove their case at the pleading stage. They need only show that if all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them, they have stated a cognizable claim for relief. *Navarro, supra,* at p. 732. They have done that.

Moreover, the claims pled by Plaintiffs are entirely new as they are based on the Mercury defendants' collusion with a state court judge and fraudulent misuse of California's anti-SLAPP statute: claims that that were not and could not be adjudicated in the underlying action. Therefore, defendants' motion to dismiss should be denied. To the extent that Court finds defects in their complaint, they respectfully ask for leave to amend.

Dated: December 2, 2021                                   THE ISON LAW FIRM, PC

/s/ James J Ison
James J. Ison
Attorney for Plaintiffs James J. Ison and
The Ison Law Firm, PC