UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAMES J. ISON and THE ISON LAW FIRM, PC,

Plaintiffs,

v.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO, ETHAN P. SCHULMAN, THE JUDICIAL COUNCIL OF CALIFORNIA, TANI G. CANTIL-SAKAUYE, MERCURY INSURANCE COMPANY, MERCURY CASUALTY COMPANY, CALIFORNIA AUTOMOBILE INSURANCE COMPANY, RANDALL R. PETRO, TARA L. STRONG, KERN SEGAL & MURRAY, PHILIP A. SEGAL, BRYANA S. McGUIRK, TODD P. DRAKEFORD, MICHAEL S. THOMAS, GRACE M. HARRIET, STUART D. DIAMOND, STUART DIAMOND LAW & MEDIATION OFFICE, STACEY DIAMOND-GARCIA and DOES 1 TO 25,

Defendants.

No. 2:21-cv-01546-MCE-KJN

**MEMORANDUM AND ORDER**

Through the present case, Plaintiffs James J. Ison and his firm, The Ison Law Firm PC ("Plaintiffs") seek relief from allegedly erroneous rulings issued by Defendant Ethan P. Schulman, a state court judge with Defendant Superior Court of California,

County of San Francisco, in litigation stemming from the mediation of a personal injury lawsuit. Plaintiffs assert that Judge Schulman's rulings in pretrial motions, as well as in imposing sanctions against Plaintiffs, violated Plaintiffs' rights to free speech and redress of grievances under the First Amendment to the United States Constitution. Plaintiffs further assert that Defendants Judicial Council of California and Tani Cantil-Sakauye, Chief Justice of the California Supreme Court, deprived them of the due process rights under the Fourteenth Amendment by assigning Judge Schulman to sit on the appellate court which will review his decisions because of the actual bias or appearance of bias such assignment could entail, and Plaintiffs seek a declaratory judgment as to the propriety of such assignment. In addition, through additional causes of action asserted against the insurance carrier, defense firm and their representatives who participated in the mediation, as well as against the mediator himself, Plaintiffs claim their constitutional rights were deprived under color of state law pursuant to 42 U.S.C. § 1983, and further allege that said Defendants committed fraud and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq.

Now before the Court for adjudication are two motions to dismiss, one brought by Defendants Schulman, Cantil-Sakauye, the Superior Court of the County of San Francisco, and the Judicial Council of California ("the Judicial Defendants"), with the second filed on behalf of the insurer Defendants, defense counsel, and their representatives and personnel ("the Non-Judicial Defendants").

The Judicial Defendants' Motion (ECF No. 22) argues that Plaintiffs have no Article III standing to assert claims against either Justice Cantil-Sakauye or the Judicial Counsel and move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)[1] on that basis. They further assert that this Court also lacks subject matter jurisdiction under the so-called Younger abstention as well, with Judge Schulman and the Superior Court immunized from liability in any event. Finally, the

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

Judicial Defendants argue that Plaintiffs cannot state a viable claim against them in any event and are therefore entitled to dismissal under Rule 12(b)(6) as well.

The Non-Judicial Defendants, for their part, contend in their Motion (ECF No. 15) that Plaintiffs cannot state a viable claim based on res judicata and collateral estoppel grounds. They further contend that permitting Plaintiffs to proceed with this litigation would amount to a de facto appeal of the underlying state court orders in contravention of the Rooker-Feldman doctrine. Finally, the Non-Judicial Defendants contend that two conspiracy-premised causes of action (the RICO and Civil Rights Act claims) do not state a viable claim.

As set forth below, both Motions are GRANTED.[2]

## BACKGROUND

On September 13, 2019, Plaintiffs filed a personal injury lawsuit in the San Mateo Superior Court on behalf of Brenda Talens arising from a motor vehicle accident. Defendant Mercury Casualty, who insured the defendants to that proceeding, retained the law firm of Kern, Segal & Murray ("Kern Segal") as defense counsel. In the course of the Talens action, a dispute between the parties arose concerning a December 16, 2020, mediation session which concluded, after four hours, without a settlement. Plaintiffs suspected that Mercury's adjuster, Defendant Brenda Strong, did not actually attend the mediation because the selected mediator, Defendant Stuart Diamond, kept the parties in separate rooms and Plaintiffs did not actually see Ms. Strong. Because Plaintiffs had agreed to dismiss one of Mercury's insureds from the litigation if Mercury paid for the mediation and had a representative personally attend, Plaintiffs requested confirmation from Diamond the next day that Strong had in fact been in attendance.

///

[2] Having determined that oral argument would not be of material assistance, the Court ordered these matters submitted on the briefs in accordance with E.D. Local Rule 230(g).

Plaintiffs declined to dismiss Mercury's insured because it felt the documentation provided for Strong's presence was inadequate. According to Plaintiffs' currently operative pleading, the First Amended Complaint ("FAC"), Mercury then "began libeling Plaintiffs and sought monetary sanctions against them because of their refusal to dismiss . . . " FAC, ECF No. 12, ¶ 4. This prompted Plaintiffs to file a second state lawsuit, this time in San Francisco Superior Court against Mercury and Kern Segal. Plaintiffs contended in that action that the mediation was a "sham" in which the mediator went back and forth between Attorney Ison and an empty room for four hours. Plaintiffs asserted causes of action against Mercury and its counsel for defamation, abuse of process, civil rights violation, intentional infliction of emotional distress, fraud and deceit, and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof Code §§17200, et seq.

In response to Plaintiffs' new lawsuit, Mercury filed a so-called anti-SLAPP motion alleging that Plaintiffs' lawsuit arose from Defendants' communication and other protected litigation activity in the underlying San Mateo County personal injury action. Judge Schulman granted that motion, rejecting Plaintiffs' contention that Defendants' conduct was conclusively illegal and finding that Plaintiffs had not met their burden of establishing, via admissible evidence, a probability of prevailing on their claims in any event. In contrast, the court noted both the mediator and defense counsel provided sworn declarations stating that they were, in fact, physically present at the mediation. See July 12, 2021 Order, Defs.' Request for Judicial Notice ("RJN"), ECF No. 15-4, Ex. A, pp. 3-5.[3]

Plaintiffs moved for reconsideration of Judge Schulman's order, and in doing so made numerous statements that Schulman believed "impugned the integrity of the court." Id. at ECF No. 15-6, Ex. C, 3:21-22. Among other things, Attorney Ison accused Judge Schulman "of 'complete disregard' for the law; 'purposely committ[ing] clear and

[3] Both the Judicial and Non-Judicial Defendants have requested that the Court judicially notice various documents from the underlying state court cases pursuant to Federal Rule of Evidence 201. Those requests (ECF Nos. 15-3 and 22-2) are unopposed and are hereby GRANTED.

obvious legal errors when ruling in Mercury's favor'; 'disregard[ing] and discredit[ing] Plaintiff's evidence'; 'biased characterization of the evidence, antagonistic posture and apparent belief that he could make Plaintiff's evidence disappear by judicial fiat'; and conducting a hearing that 'was in Plaintiffs' view a sham as Judge Schulman did not intend to give Plaintiffs a fair hearing.'" Id. at 3:22-28.

Attorney Ison continued his diatribe in a motion to tax costs sought by the Defendants, asserting "that Mercury had Judge Schulman 'in its pocket', [and] that Judge Schulman 'chose to disobey the law so he could grant Mercury's motion.'" Id. at 4:18-19. Ison further accused Schulman of a "headlong rush to grant Mercury's motion"; of being "so drunk on his power he believed he could make the evidence disappear"; and of "disobey[ing] the law without compunction when its suits his purposes." Id. at 4:20-28.

By order filed August 30, 2021, Judge Schulman denied Plaintiffs' motion for reconsideration, rejecting as "utterly specious" Plaintiffs' argument that the court's "unexpected disobedience of the law" in ruling on the motion constituted "new evidence" warranting reconsideration. Id. at 5:15-18. On the same date, Schulman issued an order to show cause re contempt. Rather than responding, Ison filed a verified statement of disqualification, which the court struck by order filed September 4, 2021. Id. at 5:15-22.

After Kern Segal filed an anti-SLAPP motion similar to that made by Mercury, Attorney Ison again doubled down, accusing Schulman of being "a corrupt judge," asserting that he "was a member of [Defendants'] conspiracy and intended to use his power and position as a judge to suppress evidence and effectuate the theft they are in process of committing," and accusing Schulman "intentionally disobey[ing] the law" and "intentionally committ[ing] error to arrive at a predetermined result." Id. at 6:2-7. Unbelievably, Ison went so far as to accuse Schulman of being "an active participant in [Defendants'] criminal enterprise" and turning the court's law and motion department into "the hub of a criminal enterprise engaged in racketeering activities." Id. at 8:24-26.

///

Ultimately, Judge Schulman found Plaintiffs in direct contempt for his statement impugning the court's integrity, fined him $5,000, and directed the clerk of court to forward his findings and judgment to the California State Bar. Id. at 10-11. Judge Schulman also awarded attorney's fees in the amount of some $80,000 to Mercury. FAC, ¶ 138. Plaintiffs have appealed the subject rulings and according to the parties that appeal remains ongoing.[4] In addition, it appears that the initial San Mateo County personal injury lawsuit has also not been finally concluded.

Plaintiffs nonetheless filed the present lawsuit in federal court on August 27, 2021. In the face of a Motion to Dismiss filed by the Non-Judicial Defendants, Plaintiffs filed the currently operative FAC on October 10, 2021. As indicated above, the FAC has drawn an additional Motion to Dismiss by the Non-Judicial Defendants (ECF No. 15), as well as a separately filed dismissal request as to the Judicial Defendants (ECF No. 22).

## STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. Id. Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. United States v. Cotton, 535 U.S. 625, 630 (2002). Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009). Lack of subject matter jurisdiction may also be raised by the district court sua

[4] See Judicial Defs' Mot, ECF No. 22, 2:21-27, 8:28 n.2; Reply, ECF No. 27, 2:12-13; Pls.' Opp., ECF No. 21: 13-14.

sponte. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999). Indeed, courts "have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." Id. at 514; see Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

Where, as here, a party makes a facial attack on a complaint, it challenges jurisdiction based solely on the pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

**B. Motion to Dismiss for Failure to State a Claim**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

///

pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**C. Leave to Amend**

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160

///

(9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A. Judicial Defendants

Plaintiffs do not contend that the Judicial Council of California and California Chief Justice Tani Cantil-Sakauye had any role in the alleged mediation "hoax" that gave rise to this matter, or to the operative facts presented by either underlying case. Instead, Plaintiffs take issue in general with the assignment of California superior court judges to sit temporarily in the California Courts of Appeal. More specifically, Plaintiffs appear to contend that Chief Justice Cantil-Sakauye and the Judicial Council violated Plaintiffs' constitutional rights because at some point in the past Judge Schulman was assigned to sit temporarily in the Court of Appeal. Tellingly, however, Plaintiffs do not contend that Schulman received any such assignment during the pendency of the underlying cases, or that Judge Schulman decided any case involving Plaintiffs during his temporary assignments.

Defendants Chief Justice Cantil-Sakauye and the Judicial Council argue the Court lacks subject matter jurisdiction here because Plaintiffs have not established, and cannot establish, Article III standing. Under Article III, section 2 of the United States Constitution, "it is well settled that federal courts may act only in the context of a justiciable case or controversy." Sec. & Exch. Comm'n v. Med. Comm. for Human Rights, 404 U.S. 403, 407 (1972) (citations omitted). Judicial power extends only "to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." Summers v. Earth Island Inst., 555 U.S. 488, 492 (2009). Abstract injury is not enough. O'Shea v. Littleton, 414 U.S. 488, 493-494 (1974).

To satisfy Article III standing requirements, then, a plaintiff must demonstrate "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual

or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000); Summers, 555 U.S. at 493. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing those elements. Lujan v. Defs. Of Wildlife, 504 U.S. 555, 561 (1992). If that burden cannot be met, the plaintiff is precluded from litigating in federal court. See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 475-476 (1982).

The Court agrees that Plaintiffs cannot satisfy Article III standing requirements in the claims they assert against Chief Justice Cantil-Sakauye and the Judicial Council. The only allegations levied against them are that in some point in the past, the Chief Justice, with the apparent assistance of the Judicial Council, temporarily assigned Judge Schulman to sit in the Court of Appeal. Plaintiffs make no specific contention that any such assignment had anything to do with the adjudication of the underlying cases and offer no suggestion in any of their briefing that any such connection can be alleged. Plaintiffs' general assertions in this regard, unlinked and untethered to any specific harm, is wholly insufficient to satisfy the first element for Article III standing; namely, that the Plaintiffs suffered an "injury in fact" which is "concrete and particularized" and "not conjectural or hypothetical." Friends of the Earth, 528 U.S. at 180-81.

Plaintiffs are no more successful in demonstrating the second requisite element that their injuries as alleged are "fairly traceable" to either the Chief Justice or the Judicial Council. Id. Plaintiffs have made no attempt to argue that Judge Schulman's adverse rulings are directly related in any way to anything either Cantil-Sakauye or the Judicial Council did or did not do, and they have made no indication they can do so if given the chance. Finally, with respect to Article III's third and final requirement that any action by this Court could redress Plaintiffs' alleged injuries, again no such showing can be made. Plaintiffs' claims against Chief Justice Tani Cantil-Sakauye and the Judicial

Countil are therefore dismissed. Because there is no indication that amendment of the pleadings could rectify Plaintiffs' ability to establish standing, no leave to amend will be permitted.

Plaintiffs' claims against the remaining Judicial Defendants, Judge Schulman and the Superior Court California, County of San Francisco (where Schulman sits) also fail. Under the so-called Younger abstention, as a general rule federal courts must refrain from granting any injunctive or declaratory relief that would interfere with pending state judicial proceedings. Younger v. Harris, 401 U.S. 37, 40-41 (1971); see also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11(1987). "So long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." Pennzoil, 481 U.S. at 14. As the Ninth Circuit has recognized, abstention is accordingly required if "the state proceedings (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." Cook v. Harding, 879 F.3d 1035, 1039 (9th Cir. 2018) (citations omitted).

Arguing that Plaintiffs' case here against Judge Schulman and the Superior Court falls squarely within the purview of Younger abstention, Defendants argue that Plaintiffs' claims are subject to dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). Defendants are correct. First, Plaintiffs' lawsuit unquestionably requests injunctive relief against Judge Schulman and the Superior Court. FAC, ECF No. 12, 39:7. Second, the parties agree that the underlying San Francisco County state lawsuit remains ongoing on appeal. Third, while Plaintiffs claim that no important state interest is implicated because the disputes relate only to an individual case, it is well recognized that state have important interests in administering their judicial systems (E.T. v. George, 681 F. Supp. 2d 1151, 1175 (E.D. Cal. 2010)), not to mention California's unquestioned need to administer its system of justice free from federal influence. See, e.g., Kelly v. Robinson, 479 U.S. 36, 49 (1986). Finally, there is no impediment to Plaintiffs raising any federal

question arising from the San Francisco County action in the state court appeal that is already pending. Therefore, Younger abstention squarely applies to the inclusion of Judge Schulman and the Superior Court and Plaintiffs' complaint against them must accordingly be dismissed. Gibson v. Berryhill, 411 U.S. 564, 577 (1973). No leave to amend will be permitted since this jurisdictional shortcoming cannot be rectified.

The Judicial Defendants also assert a number of arguments as to why Plaintiffs cannot assert a viable claim against them under Rule 12(b)(6) aside from the subject matter jurisdiction considerations discussed above. Defendants claim, for example, that Plaintiffs' suit against them is barred by the Eleventh Amendment to the United States Constitution, which grants sovereign immunity to states against suits filed in federal court against a state, an arm of the state, its instrumentalities or its agencies. See Regents of the University of California, et al. v. John Doe, et al., 519 U.S. 425 (1997); Durning v. Citibank, N.A., 950 F.2d 1419, 1422-23 (9th Cir. 1991).

Eleventh Amendment immunity applies to the Judicial Defendants here. The Chief Justice of California is a state official[5] protected from suit by the Eleventh Amendment. See, e.g., Kamal v. County of Los Angeles, No. CV 17-1986-RGK (DFM), 2019 WL 2502433 at *4 (C.D. Cal. May 2, 2019); Cunningham v. McKay, No. 13-cv-04627-WHO, 2014 WL 129645 at *9 (N.D. Cal. Jan. 14, 2014). Judicial officers like Judge Schulman have also been held to be state officials. See, e.g., Cal. Const., art. VI, § 4, Broughton v. Cigna Healthplans, 21 Cal. 4th 1066, 1081-82 (1999); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999) (holding that municipal court judges are "state officials"). Additionally, suits against the California Superior Court are deemed suits against the state and therefore are barred by the Eleventh Amendment. Cal. Const., art. VI, § 4; Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003). Finally, a lawsuit against the Judicial Council is also a suit against

[5] State officials are entitled to Eleventh Amendment immunity when "the state is the real, substantial party in interest." Pennhurst v. Halderman, 465 U.S. 89. 1011 (1984). This is because such suits "seek to impose personal liability upon a governmental official for actions he takes under color of state law," and "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985).

the State and thereby precluded. Cal. Const., art VI, § 6; Wolfe v. Strankman, 392 F.3d 358, 364 (9th Cir. 2004).

Plaintiffs seek to evade the immunity conferred by the Eleventh Amendment by arguing that they seek no monetary damages against any of the Judicial Defendants, only injunctive relief that will prevent continuing violations of their constitutional rights and any additional harm flowing therefrom. Those arguments are misplaced. As a fundamental matter, there is no ongoing violation of federal law identified in the FAC, only allegations that Judge Schulman deprived them of their rights in past rulings and that hypothetically the Court of Appeal could be biased in favor of Judge Schulman at some unspecified point in the future because he was permitted by the Chief Judge and/or Judicial Council to temporarily sit on appellate panels. Those allegations are plainly insufficient. Moreover, and in any event, asking for an injunction prohibiting the Judicial Defendants from continuing to violate Plaintiffs' civil rights, would conceivably require this Court to continuously monitor and/or intervene in ongoing state court proceedings to ensure that Plaintiffs' rights are not being violated. As Defendants note, any such ongoing federal court intervention has been strictly rejected based principles of Younger abstention. See O'Shea v. Littleton, 414 U.S. 488, 501-02 (1974); E.T. v. George, 681 F. Supp. 2d 1151, 1162 (E.D. Cal. 2010). Plaintiffs' lawsuit against the Judicial Defendants therefore fails on Eleventh Amendment grounds as well.

As a final matter, Judge Schulman and the Superior Court contend they are absolutely immune from liability here in any event under the long-established rule that judges are immune from civil suits arising out of the exercise of their judicial functions. Mireles v. Waco, 502 U.S. 9, 11 (1991). "[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. 335, 347 (1871). In thereby discouraging civil suits, judicial immunity "thus promotes the use of appellate procedures as the standard system for correcting judicial error." In re

Castillo, 297 F.3d 940, 947 (9th Cir. 2002), citing Forrester v. White, 484 U.S. 219, 225 (1988).

Plaintiffs' allegations against Judge Schulman solely concern his judicial acts, which they contend were not only erroneous but violated their constitutional rights. Judicial immunity still applies, however. As the Supreme Court has explained:

> [Judicial] immunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.

Pierson v. Ray, 386 U.S. 547, 554 (1967) (internal quotations and citations omitted).

In opposition, Plaintiffs attempt to argue that judicial immunity applies only to damages, and not to instances where declaratory relief is "unavailable or inadequate", thus making injunctive relief proper. See Brandon E. ex rel. LIstenbee v. Reynolds, 201 F.3d 194, 197 (3d Cir. 2000). Plaintiffs argue that declaratory relief, which they have not sought as to Judge Schulman or the Superior Court, is not "appropriate" for stopping Judge Schulman since "their dispute has progressed well past the point of peaceable resolution." Pls.' Opp, ECF No. 26, 17:3-5. This somewhat puzzling distinction misses the mark. First, Plaintiffs' FAC makes no contention that declaratory relief was unavailable. Second, and more fundamentally, judicial immunity applies regardless of whether Plaintiffs seek monetary damages, injunctive, or declaratory relief. Moore v. Brewster, 96 F.3d 1240, 1243 (9th Cir. 1996); Mullis v. U.S. Bankr. Court for Dist. of Nevada, 828 F.2d 1385, 1394 (9th Cir. 1987). This makes sense because judicial immunity is an immunity from suit, and not just from the ultimate assessment of any damages. Mireles v. Waco, 502 U.S. at 11. Consequently judicial immunity presents yet another reason why Plaintiffs' claim against the Judicial Defendants are

///

///

///

subject to dismissal for failure to state a viable claim.[6] Their Motion to Dismiss is GRANTED without leave to amend.

**B. Non-Judicial Defendants**

The Non-Judicial Defendants also urge the Court to find a lack of subject matter jurisdiction against them on abstention grounds under the so-called Rooker-Feldman doctrine. That doctrine "is a well-established jurisdictional rule prohibiting federal courts from exercising appellate review over final state court judgments." Gomes v. Santa Clara Cty., No. 5:18-cv-04191-EJD, 2020 WL 4747901 at *6 (N.D. Cal. Aug. 17, 2020). Like Younger abstention, the Rooker-Feldman doctrine is rooted in federal deference aimed at avoiding interference with state court decisions. It "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." Reusser v. Wachovia Bank, 525 F.3d 855, 858-59 (9th Cir. 2008). As the Gomes court explained:

> A "de facto appeal" occurs where claims raised in the federal action are "inextricably intertwined" with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules.
>
> The Rooker-Feldman doctrine, generally speaking, bars a plaintiff from bringing a § 1983 suit to remedy an injury inflicted by the state court's decisions. The doctrine may even apply when the merits of a state court decision are not directly contested. The relevant inquiry is whether a plaintiff's claim would require review of the relevant state-court decisions.

Gomes, 2020 WL 4744901 at *6 (internal quotations and citations omitted).

Here, an appeal is already pending in the underlying San Francisco Superior Court state court proceeding. Rooker-Feldman bars interference with that pending

///

///

---

[6] While the Court recognizes that the Judicial Defendants also make additional arguments as to why Plaintiffs cannot assert particular causes of action against them, given the compelling reasons for dismissal already enumerated above, the Court need not address Defendants' other contentions and declines to do so.

appeal.[7] Plaintiffs cannot be permitted to resort to this Court to obtain a result different than the judgment already meted out by the state proceedings. Abstention is therefore indicated and Plaintiffs' claims against the Non-Judicial Defendants fail on jurisdictional grounds.

The fact that a state court has already rendered its decision on the subject matter of this lawsuit brings us to a related argument advanced by the Non-Judicial Defendants; namely, that Plaintiffs' lawsuit is also barred on res judicata grounds such that Plaintiffs cannot state any viable claim against said Defendants in this action. As Defendants point out, res judicata precludes both filing a second suit while a related first action is still pending and seeking a "second bite at the apple" with respect to a claim already decided by prior judgment. Defs.' Mot., ECF 15-1, 14:2-6. Because state court judgments are entitled to "full faith and credit" in federal courts under 28 U.S.C. § 1738, federal courts must "give the state court's resolution of the res judicata issue the same preclusive effect it would have had in another court of the same state." Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 525 (1986). Here, the Court finds that the conduct at issue as to all Defendants, as adjudicated in the underlying San Francisco County state proceedings, is the same alleged conduct now repackaged in the present federal lawsuit.[8] Plaintiffs' attempted collateral attack of the state court rulings is therefore precluded by res judicata, with their only remedy being through the state court appeal

///

///

///

///

[7] While Plaintiffs argue that the Rooker-Feldman doctrine applies only to federal actions commenced after state court proceedings ended, and allege that contingency is not met because their "claims in the underlying matter have been appealed such that the state court action has not ended" (Pls.' Opp. ECF No. 21, 9:13-15, that distinction is unavailing. The Supreme Court is clear that abstention applies to prevent federal courts from interfering with pending state judicial proceedings. Younger v. Harris, 401 U.S. at 40-41; Pennzoil, 481 U.S. at 11.

[8] The Court summarily rejects Plaintiffs' apparent claim that Plaintiffs' claims herein are based on a different set of facts than that confronted in the San Francisco County state court lawsuit.

they already are pursuing. The Non-Judicial Defendants are entitled to dismissal for that reason as well, and their Motion to Dismiss is also GRANTED without leave to amend.[9]

**CONCLUSION**

For all the reasons stated above, Defendants' Motions to Dismiss (ECF No. 15 and 22) are GRANTED. Because the Court does not believe the deficiencies of Plaintiffs' Complaint through amendment, dismissal is without leave to amend. Inasmuch as the Court notes that there are additional Defendants in this matter for whom no proof of service or appearance has been made (to wit, Stuart D. Diamond, Stuart Diamond Law & Mediation Office, and Stacey Diamond-Garcia), Plaintiffs are ordered to show cause, by written statement filed not later than ten (10) days after the filing of this Memorandum and Order, as to why service of the summons and complaint against such Defendants was not effectuated within ninety (90) days as required by Federal Rule of Civil Procedure 4(m). Failure to timely file that statement will result in said additional Defendants being dismissed, along with Plaintiffs' entire action, with prejudice and without further notice to the parties.

IT IS SO ORDERED.

DATED: September 26, 2022

MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] Like the Judicial Defendants, the Non-Judicial Defendants also posit additional arguments alleging that certain of Plaintiffs' substantive causes of action fail to state any viable claim and should be dismissed under Rule 12(b)(6) on those grounds as well. Because the Court already has ample grounds for granting the Non-Judicial Defendants' Motion as set forth above, it need not address Defendants' remaining arguments.